*JOHN L. BROWN, Trustee, v. MERCHANT'S & FARMERS NAT. BANK, and others.

*Debt Secured by Separate Deeds of Trust---Right to Distributive Shares.*

1. A debt secured by separate deeds of trust, executed at different times, by persons liable therefor, is entitled to share *pro rata* on the full amount of the debt as it existed when such securities were given, in the distribution of the moneys arising therefrom, until the debt is satisfied.

2. In such case the debtors are alike bound to the creditor for the entire amount of the debt and their relations with each other as principal and surety can not impair the essential right of the creditor to be paid out of the assigned estates.

Civil Action, tried at Fall Term, 1877, of Mecklenburg Superior Court, before *Kerr, J.*

This action was brought by the plaintiff as trustee of McMurray & Davis against the Merchants & Farmers, the

*Bynum, J., did not sit on the hearing of this case.

Traders, and the First National banks of Charlotte, asking the Court to direct the proper distribution of funds in his hands among the trustors' creditors.

The complaint sets out in substance that on the 7th of June, 1875, McMurray & Davis being unable to meet their liabilities made a conveyance of all their partnership effects to the plaintiff in trust for the benefit of all their creditors who should prove their debts and accept the provisions of the trust, and in pursuance thereof, debts were proved to the amount of about $150,000.

Among the creditors who proved their debts, was the defendant, the Merchants & Farmers bank, to which the trustors had on the 28th of December, 1874, executed a note for $3,000 at sixty days, with Grier & Alexander as sureties, which note was discounted by the bank and became its property. On the 8th of March, 1875, Grier & Alexander made an assignment for the benefit of their creditors, *pro rata*, which was accepted by said bank, with the understanding that the bank was not to release McMurray & Davis from liability upon said debt, or Grier & Alexander from the liability growing out of their relation as sureties on the same, and was not to look to any subsequently acquired property for payment. In pursuance of said agreement the assignee of Grier & Alexander paid to said bank forty-five and a quarter per cent of said debt, amounting in the aggregate to $1,357.50.

The facts in reference to the Traders bank, also creditors of said trustors, were, that Grier & Alexander executed three notes amounting to $8,000 which were endorsed by McMurray & Davis and discounted by said bank and became its property. And the assignees of Grier & Alexander under the assignment aforesaid paid on said debt the said percentage, amounting in the aggregate to $3,620, which was accepted by the bank with the understanding and agreement between it and Grier & Alexander and McMurray &

Davis, that said payment was to operate as a discharge of the debt so far as Grier & Alexander were concerned, but should not in any way affect the liability of McMurray & Davis on the same.

The trustee has received about $65,000 of the trust fund, of which he has paid to all the creditors proving claims a dividend of forty-five per cent, except the defendants, the Merchants & Farmers and the Traders' banks, who now set up their claim against the plaintiff for the payment of a like dividend on the total amount of their debts, regardless of the payment by the assignee of Grier & Alexander as aforesaid. The assertion of said claim was resisted by the defendant, the First National bank, (upon proof of whose claim, it was recognized by the plaintiff as one of the trustors' creditors) and all the other creditors of the firm of McMurray & Davis in like interest with it.

By reason of these conflicting interests and complications growing out of the same, the plaintiff submits to the direction of the Court, and asks for such order as may enable him to disburse the trust funds according to law.

His Honor held that the Merchants & Farmers, and the Traders bank were entitled to a *pro rata* distribution of the fund on the whole amount of their respective claims against McMurray & Davis, and directed the plaintiff to disburse accordingly, from which ruling the First National bank appealed.

*Mr. A. Burwell*, for plaintiff.

*Messrs. Wilson & Son, Shipp & Bailey, C. Dowd, J. E. Brown,* and *R. Barringer*, for defendants.

SMITH, C. J. On the 8th day of March, 1875, Grier & Alexander made an assignment of their property in trust to secure *pro rata* all their creditors. The deed contains a provision that the creditors thus secured should accept the

appropriation and not look to any future acquisitions of the firm for further payments, but their liability should remain unimpaired for the enforcement of a debt due by McMurray & Davis on which they were bound as sureties. On the 7th day of June following, McMurray & Davis becoming insolvent also conveyed their partnership effects to the plaintiff for the benefit of such of their creditors as should prove their debts, and accept the provisions made in their behalf. Both assignments were accepted by the creditors on the terms set out in the respective deeds. There are two debts secured in both assignments, in one of which one firm is principal and the other endorser, and in the other their relations are reversed. The debts are: (1) A note executed December the 28th, 1874, at sixty days, for three thousand dollars by McMurray & Davis, and endorsed by Grier & Alexander to the defendant, the Merchant's & Farmer's National Bank of Charlotte. (2) Three notes in the aggregate sum of eight thousand dollars made by Grier & Alexander, and endorsed by McMurray & Davis to the defendant, the Trader's National Bank of Charlotte. The assignees of Grier & Alexander in distributing the trust funds have paid to the Trader's National Bank the sum of three thousand, six hundred and twenty dollars, a dividend of forty-five and a quarter per centum on the debt, and this money was received with the express understanding that the bank should not thereby be prejudiced in its claim against McMurray & Davis, nor in any remedy it might pursue against them. No payments were made from any source upon the debts provided for in the assignment of March the 8th, 1875, before the assignment of McMurray & Davis was made, and the dividend was long afterwards.

The question upon which the advice and direction of the Court are asked is this: Shall the two debts secured in both deeds share for their full amount in the distribution of the

trust funds of McMurray & Davis, or shall they be reduced by the sums received from the assignees of Grier & Alexander, and the residue only draw its ratable part?

The complication which might grow out of the peculiar and exceptional provisions contained in the deeds are waived by the parties and need not enter into our consideration. We have been aided by the arguments and researches of counsel to the results of which our own investigations have contributed but little, and cases cited are mostly to be found in the reports of our sister State of Pennsylvania. With the instruction furnished by them, and under the guidance of acknowledged principles of equity, we proceed to examine the question.

Divested of unnecessary surroundings the case is simply this: Debts are secured by separate assignments made by different persons liable for them. The trust funds together are sufficient to pay a certain per centum on the whole amount. Shall the creditors receive their full dividends, or does the law *instanter* upon the execution of the first assignment apply their share of the estate conveyed, when afterwards ascertained in value, to a part payment of the debts, and the unpaid residue become the debt provided for in the second assignment? It is plain if the assignments were made at the same moment, no such consequences would follow. Is the rule for distribution changed when they are executed at different dates? The equitable principle by which a creditor, secured in the funds, may be compelled by a creditor secured in one only to seek satisfaction first out of that fund on which the latter has no claims, is but a method of more effectively appropriating the debtor's property to the payment of his own debts, and does not apply when the funds are provided by different debtors. The creditors here have a double security for the same debts, and we know of no principle by which they can be restrained from resorting to either and to both,

and taking full *pro rata* dividends from each until their debts have been paid. To sustain this right of the creditor we will refer to some of the adjudications on the subject.

In *Morris* v. *Olivine*, 22 Penn. State (1860) 441, it is held that a creditor having a bond and notes secured by mortgage may, nevertheless, in the first instance seek satisfaction of his debts out of the personal estate of the debtor which has been assigned for the benefit of all his creditors, and it is declared that if he had proceeded under his mortgage and collected part of his claim, he would have been still entitled to a dividend out of the assigned estate on the whole unreduced debt until it was paid in full. So in *Miller's appeal*, 31 Penn. St. 481, it was decided that when the debtor made a general assignment of his estate for the benefit of his creditors, and became afterwards entitled to a legacy which was attached and recovered by a creditor he was nevertheless entitled to a full share of the assigned, estate without reduction by reason of an appropriated legacy. In this case STRONG, J. now an Associate Justice of the Supreme Court of the United States, says: " By the deed of assignment the equitable ownership of all the assigned property passed to the creditors. They became joint proprietors and each creditor owned such a proportionate part of the whole, as the debt due him was of the aggregate debts ;" and that " the reduction of the debt after the creation of the trust and after the ownership had become vested, it would seem, must be unimpaired."

In *Bair and Shank's appeal*, 69 Penn. St. 272, it is decided that when a debtor conveys his property for the benefit of his creditors and becomes insolvent, a surety who afterwards pays one of the debts is subrogated to the rights of the creditors, and may recover a full dividend from his principal's estate. In *Brough's case*, 71 Penn. St. 460 (1872), Brough being indebted to Hinchman gave him a note with an endorser, and deposited at the same time a note of one

Gobley as collateral security for the debt. Brough afterwards made an assignment for the benefit of his creditors, and the endorser made several payments on his note. In the distribution of Brough's estate, Hinchman was declared to be entitled to a dividend on the entire debt, and until he was paid the endorser could get nothing. "Hichman," say the Court, " became equitable owner of a portion of the assigned estate under the assignment which could not be diminished by payment of the collaterals. He had two funds or securities for the payment of his claim,—the assigned estate, and the notes transferred to him as collateral,—and he has a right to exhaust both if necessary to satisfy his debt against Brough."

The doctrine deduced from the cases is that a creditor may have many securities for the same debt, and yet the debt remain undiminished in amount, and that the possession of one security is not a reduction of the demand. But in *Miller's estate*, 82 Penn. St. 113 (1876) the very question before us was decided. The facts of this case were these: John Miller executed a note which Amos Miller endorsed to Bair and Shank for $3,000. John Miller afterwards made a conveyance of his property to secure his creditors, and still later on the 24th day of October, 1872, Amos Miller made a similar assignment. The Court below held that in distributing the estate of Amos Miller, the surety, the debt of John Miller, the principal, must be reduced by the value of the share of his estate applicable to the debt. This judgment was reversed on appeal, and WOODWARD, J. delivering the opinion, says: " Upon authority the rights of appellant would seem clear. They would seem clear also in view of a principle so simple and palpable as to be obvious to the plainest comprehension. If the estates of the two debtors had been adequate to the purpose, the appellants had a right to demand payment of their debt in full, that is, if each estate had been large enough to pay a

dividend of fifty per cent, the dividends from both if apportioned to it, would have satisfied the claim. By the rule which was adopted by the Court below, if John Miller's estate had paid fifty per cent, and a dividend of fifty per cent had been subsequently declared on Amos Miller's estate, the appellants would have been confined to a *pro rata* distribution on the balance remaining due, and one full quarter of their claim would have been left unpaid. Surely a rule that would so divert funds admittedly adequate as to make the satisfaction of an uncontested debt impossible, would be neither safe, nor sound nor just." Not dissimilar is the doctrine enunciated in the *Warrant Finance Co's case*, in 1869, 5 Ch. Appeal Cases, 86.

The Warrant Finance Co. held unpaid bills of exchange of large amount drawn upon and accepted by the Contract Corporation and endorsed by the Joint Stock Discount Company. The Contract Corporation and the Joint Stock Discount Company were in process of liquidation, and the Warrant Finance Co. proved its debt for the full amount against both. It had already received from the estate of the acceptor to the amount of 4s. 6d. on the pound, and from that of the endorser 15s. 6d. on the pound. It was proposed to continue to prove against the estate of the Joint Stock Discount Company until certain arrears of interest were paid. It was decided that the Warrant Finance Company had a right to receive dividends on its full debt until it was paid.

"When a creditor," says STORY, "has a right to resort to two persons who are his joint and several debtors, he is not compellable to yield up his remedy against either, since he has a right to stand upon the letter and spirit of his contract, unless some supervening equity changes or modifies his rights. 1 Story Eq. § 645. To the same effect is *Thompson* v. *Spittle*, 102, Mass. 211. It is therefore manifest that successive securities for the same debt from one or from

several persons do not diminish its amount, and it is entitled to share in the distribution of the moneys derived from either of them, as it existed when such security was given. An assignment vests in the creditor as an equitable owner, a share of the estate assigned, corresponding with his claim, and this share is not subject to reduction by subsequent appropriations or payments, when the estate or its proceeds. are to be divided.

Let us examine and see what would be the practical operation of the contrary doctrine applied to the facts of this case. It is clear that the $3000 note due the Farmers' and Merchants' bank, on which Grier & Alexander are sureties only, if paid out of their effects, would nevertheless come in for a full share of the estate of McMurray & Davis,. the principal debtors. The surety whose estate pays, is at once subrogated to the rights of the creditor as to the sum. paid, and thus the unpaid part would remain the property of the bank, and the part paid would belong to the surety. But as both principal and surety owe the entire debt to the creditor, he would be entitled also to receive the part accruing to the surety as well as to himself out of the principal debtor's estate. The surety can take no part of this estate while the debt itself remains unpaid, and is allowed afterwards, as a substituted creditor for the sum paid, to share in the general distribution. The bank would therefore in this case take a dividend upon the entire debt from such estate, while the $8000 debt due by Grier & Alexander themselves would be diminished by the sum received from their estate, and the residue only be permitted to participate in the division of the estate of McMurray & Davis. In consequence, the two creditor banks holding claims against the *same debtors* and equally secured in the *same deeds,* would not receive proportionate shares of their respective debts. out of the common fund, an injustice forcibly pointed out in the illustration in *Miller's* case of the practical working

of such a rule. Such a construction is entirely inadmissible in giving effect to instruments whose professed purpose is to make an equal and undiscriminating provision for all the assignor's debts. The debtors are alike bound to the creditors for the entire amount of the debts, and their relations with each other, as principal and surety, can not impair the essential rights of the former to be paid out of the assigned estates. Both upon reason and authority then we hold that the trust funds in the plaintiff's hands must be distributed among the secured creditors according to the amounts due at the date of the assignment to each creditor, and no underclaim be made by reason of payments made, or which ought to be made, from the estate of Grier & Alexander. Upon this expression of our opinion, we suppose the settlement can be, more conveniently to the parties, made in the Court below, and we therefore affirm the judgment and remand the cause for further proceedings therein.

No error.

PER CURIAM.　Judgment affirmed and case remanded.