OF THE

# COURT OF APPEALS

OF THE

## STATE OF COLORADO.

APRIL TERM, 1896.

SULLIVAN v. ERLE, ADMX.

ADMINISTRATION.
A creditor of an insolvent estate holding collateral security presented his claim, which was allowed to its full amount. Afterwards, under leave of county court, he sold the collateral, realizing nearly one half of his claim. A question having arisen as to the dividend he should receive upon final settlement (whether it should be computed upon the basis of the entire debt allowed, or only on the balance remaining after deducting the sum realized from the sale of the collateral), *held* that he was entitled to a dividend computed upon the amount remaining after application of the sum realized from the sale.

*Error to the District Court of Arapahoe County.*

Mr. C. D. MAY and Mr. HENRY BRAY, for plaintiff in error.

Messrs. WOLCOTT & VAILE and Mr. W. W. FIELD, of counsel, for defendant in error.

REED, P. J., delivered the opinion of the court.

A brief history of the case in this court seems necessary to a proper understanding. When the case was argued and submitted, Judge Bissell wrote an opinion for reversal, in which Judge Thomson concurred. The present writer wrote a dissenting opinion for affirmance. Such opinions were announced November 11, 1895. A petition was, filed for rehearing, which was held in abeyance until the present time.

The case of *Erle v. Lane*, 22 Colo. 273, was pending in the supreme court at the same time, involving the same question. Knowing that the question had been considered in this court, that court very properly, in determining the case, examined the two opinions, disagreed with the majority opinion, and upon the main question adopted the reasoning and conclusion of the dissenting opinion. The opinion of the supreme court was announced March 2, 1896. It then became necessary to rewrite the case, which I have done by changing the original dissenting opinion in form only, so far as was necessary to make it a majority opinion, the conclusions, reasoning and authorities remaining the same as in the former opinion, and a brief paragraph was added confining the decision to the questions involved in this particular class of cases.

Henry W. Erle died insolvent. Carrie A. Erle was appointed administratrix. The question arises in regard to the distribution of the assets of the estate among the various creditors. Plaintiff, Sullivan, was a creditor to the amount, in the aggregate, of $8,544.41, which was allowed by the court and ordered settled in the course of administration. Such indebtedness was partially secured by collaterals, which were held by him at the time his claim was allowed. Subsequently he realized from such collaterals $3,738.40, which is admitted. In the course of administration a fund was realized for distribution *pro rata* among the creditors. Plaintiff claimed that his percentage and dividend should be

calculated upon $8,544.41, being the entire amount of indebtedness allowed, and not upon $4,806, remaining after applying the proceeds collected upon the securities. The contention of the administratrix was and is that the dividend could only be computed and allowed upon $4,806, the balance remaining after deducting the amount realized upon the collateral securities. The county court sustained the view of the administratrix. Sullivan appealed to the district court, which sustained the decision of the county court, from which judgment the plaintiff sued out a writ of error to this court.

It will be observed that after the allowance of the claim, and before the administratrix applied for an order for the distribution of funds in her hands, plaintiff had converted the securities, received and retained the proceeds.

Upon the question whether a creditor whose claim is in part secured by collaterals, after having it allowed and before realizing upon his security, is entitled to dividends upon the whole claim as allowed, or it should be estimated upon the amount deducting the value of the securities, the authorities are divided. The much greater number hold that it should be upon the whole amount, regardless of the security, and there would seem to be a good reason for such holding from the fact that having received nothing in the way of money to reduce the original claim, and which should have been applied, it remains intact, and circumstances and conditions might be such as to render the securities worthless. Other decisions hold that it is the duty of the claimant to speedily, or within a reasonable time, convert his securities and apply the proceeds, and, failing to do so, he is only entitled to dividends upon the balance of the claim after deducting the value of the securities; but it seems the much better doctrine that the securities should first be converted by order of court or the act of the party, as their real value could only be ascertained by conversion, and an estimated value might far exceed or fall below the real value. But, however this may be, the fact remains that until reduced to money there is nothing in the way of

payment to reduce the original claim. But in this case the
securities having been converted, the question is whether
he is entitled to a dividend upon the whole amount, includ-
ing the amount he had received. If the questions were sub-
mitted to any practical business man, it is obvious that the
answer would be that the party was entitled to a dividend
upon his debt, that the debt was the balance unpaid, that
the amount received for securities was a payment *pro tanto*,
and to that extent the debt was extinguished. Such would
of necessity be the answer of a layman, and the jurist would
answer the same way were the question not befogged by
conflicting legal decisions.

A very brief review of the origin of the rule contended
for by counsel of appellant may not be uninstructive. So
far as adjudications are concerned, the first we can find was
that of *Greenwood v. Taylor*, 1 Russ. & M. 185: " A *mort-
gagee* petitioned for the sale of his security *and to be per-
mitted* to prove the full amount of his debt. * * * *Held,
that he could prove only for so much of his debt as might
remain unpaid by the produce of the mortgaged estate.*" This
case was decided by Sir John Leach in 1830. In *Mason v.
Bogg*, 2 Myl. & K. 443, it is said the decision in *Greenwood
v. Taylor* was " *questioned*" by Lord Cottenham; subse-
quently, what was *questioned* became stated as *overruled*.

In a foot note to *Mason v. Bogg*, it is clearly shown that
it was not overruled, but its applicability to the *case* was
*questioned* for the reason " that Sir John Leach rests his
decision not upon the peculiar jurisdiction in bankruptcy,
*but upon the general principles of a court of equity in the
administration of assets;* " while Lord Cottenham was apply-
ing the English law of bankruptcy, and " *was hesitating
between principle and practice.*" Upon this as a foundation,
many states have based their decisions. One very impor-
tant sentence in the opinion of Lord Cottenham appears to
have been overlooked. He said, in speaking of *Greenwood
v. Taylor*, and speaking of its want of applicability: " It is
further proved by the circumstances that *in bankruptcy a*

*particular mode is prescribed.* A creditor may there prove; but then he must give up his security; or he may obtain an order that his security should be sold, and that he should prove for the difference. *In equity,* however, a party may come in and prove without a giving up or *affecting* his securities, *except so far as the amount of his debt may be determined by what he may have received,"*—clearly indicating that dividends could not be declared on the whole sum, only so long as the collaterals were unconverted, and that a different rule might prevail after realizing upon the collaterals; in other words that the right to declare dividends upon the whole debt only remained while the creditor held the securities as collateral. The uncertain decision of Lord Cottenham was regarded as a precedent and adopted by many of the older states that still continue to follow it, by reason of the earlier decisions in the same state. Such is the case in almost every case cited in support of plaintiff's contention.

The science of law, like every other science, is and should be progressive, and should keep step with human progress in other lines, and unless a principle is founded upon justice, equity and reason, it should be discarded like any other obsolete tradition. The present advanced condition in all other departments is such that the laws of the middle ages, although perhaps proper under the conditions then existing, can hardly be applied to the business of the present world.

Counsel for appellant appear to confound cases in which the security was unconverted with those in which there had been a conversion into money.

In the case of *Third National Bank v. Haug,* 82 Mich. 607, cited and relied upon, a portion only of the security had been converted. Cahill, J., who wrote the majority opinion, said: " The question here presented is an interesting one. *If it were a new one in this state, much could be said and many authorities cited in support of either position, but we think the question is ruled by Bank v. Byles,* 67 Mich. 296," —leaving it uncertain how the case would have been decided had it not been for the former adjudication in the same court;

and the learned judge, instead of deciding upon the general principles of equity, rests it upon the statutes of that state relative to *voluntary assignments*. As it was, Morse, J., dissented, refused to follow the former case, and in an able and unanswerable argument points out the injustice of the rule adopted.

In the case of *People v. Remington*, 121 N. Y. 328, the court, following former decisions, held "the creditors are entitled to prove their claims against the estate without regard to any collaterals *they may hold*, and to receive dividends for the amount proved." What the court would have held, had the securities been converted into money before the application, is not known.

In *First Nat. Bank of Peoria v. Com. Nat. Bank*, 151 Ill. 308, cited and relied upon by counsel, the general rule is stated: "In the settlement of insolvent estates a creditor will be allowed to prove his whole debt without regard to any collateral security *he may hold*, and will be entitled to a dividend on his whole debt." *He may prove his whole debt*, and as long as his security is *unconverted* may receive dividends upon the whole amount. It is there followed by this very important qualification, which strongly militates against it for the purpose cited, and sustains my position : " But if such creditor has two separate demands against the estate, one of which is secured by first mortgage, and the other by a second mortgage, and he is paid in full the debt secured by the prior lien out of the proceeds of the mortgaged property, he will not be entitled to a dividend on both of his claims, even though they are allowed as a single demand, but only to a dividend on the debt not so paid. By the payment of the debt of $5,399.10, it was extinguished as a debt. It had no existence as a claim after such payment, and could not enter into any claim as a part thereof and be a basis for adding to the distributive amount of another claim, or another item going to make up the whole claim. To do so would be to give such other part of the claim an advantage by way of preference." If the whole debt had been paid by the securities, he would

have had no claim upon the estate. What difference can there be between the extinction of the whole debt and a part of it, as to the right of the part extinguished to participate in the proceeds of the estate ?

In a long list of cases cited but one case presents the same question raised here. In only one case had the creditor realized upon his security and converted it into money. That was *Patten's Appeal*, 45 Pa. St. 151. A firm had sold sugar to the amount of $41,831.36, for which they took notes. Part of the sugar had been shipped and the balance was in the warehouse of the vendors. When the purchasers failed and made an assignment, vendors held notes for $23,239.65. They sold the sugar in store, realizing $21,026.28, leaving a balance of $2,394.11 unpaid. The court allowed a dividend upon the whole amount due at the time of the assignment, basing its decisions upon two former decisions of the same court. It is claimed in the opinion to be based upon the *Miller Case*, but a comparison will show almost nothing in common between them. The opinions in both cases were written by the same judge, and in the second he greatly exceeds himself in the former, in which no question arose in regard to money realized from the sale of collaterals. The latter is absolutely without precedent either in England or America. If an humble individual like myself can be allowed to criticise the decision of the court of last resort of a great state, I would say the decision was worthless as a precedent for any purpose, and seems to have been forced in the interest of the home firm. I will briefly state another rather startling decision of law in the case. The sugar sold amounted to, in round numbers, $41,000, of which say $20,000 in value had been shipped and received by the purchasers. The remainder, say of the value of $20,000, at the time of the failure of the purchasers, was in the warehouse of the vendors, had never been shipped, and was by the vendors sold and the money applied on the purchase notes. To bring it within the supposed rule of law, the remaining sugar was by the court held to be *collateral security* for the notes, when the

question was raised by counsel. The law of collateral security is that it is a matter of contract between the parties,—the voluntary delivery and pledging of securities for the specific purpose of securing the debt. This fundamental requirement being lacking, the sugar could in no sense be legally regarded as collateral, and the right of the vendors was based upon one of two legal remedies; which, is unimportant.

The transaction was either a rescission *pro tanto* of the sale, or a stoppage and seizure *in transitu*. Either of the latter is as clearly based upon well defined principles of law as any right. It is a legal right growing out of the conditions, while the former can only arise by contract and voluntary pledge. Under the law it was evidently no more collateral than if the money had been the proceeds of an attachment; but in order to declare a dividend on the $23,000, $21,000 of which had never been delivered by the vendor, it was necessary first to decide that the sugar was collateral, which was done, then allow a dividend on $21.000 of goods never delivered, to pay in full the $23,000 remaining unpaid. I have dwelt thus fully upon the case from the fact that it is the only one I can find where the court has held money, the proceeds of converted security, entitled to dividends. I cannot regard the case as authority. If, as we are informed by the books, the distribution of insolvent estates is based upon the general principles of equity, it is an example of the ease with which rules of equity can be perverted, and if a case can be found that more clearly demonstrates the inequitable character of the rule contended for, I have not found it.

Several other states, from precedent and former decisions, have decided the question in the same way,—probably a majority,—but it is far from being overwhelming in that direction. In *Amory v. Francis*, 16 Mass. 308, decided previous to Lord Cottenham's decision in *Mason v. Bogg*, *supra*, Chief Justice Parker, one of the most eminent jurists of this country, and fully the equal, if not the superior, of Lord Cottenham, decided the other way, and gave his reasons as follows: The creditor "suffers the pledge to be

sold, taking the proceeds towards his debt, and proving under the commission for the residue. If it were not so, the equality, intended to be produced by bankrupt laws, would be grossly violated, and the creditor holding the pledge would, in fact, have greater security than that pledge was intended to give him. For originally it would have been security only for a proportion of the debt equal to its value; whereas by proving the whole debt, and holding the pledge for the balance, it becomes security for as much more than its value, as is the dividend, which may be received upon the whole debt. * * * For the property pledged is in fact security for no more of the debt, than its value will amount to; and for all the rest, the creditor relies upon the personal credit of his debtor, in the same manner he would for the whole, if no security were taken." And such has been the line of decision in that state down to date. See *Farnum v. Boutelle*, 13 Metc. 159. See, also, Burrill on Assignments, sec. 440 (5th ed.); *Wurtz v. Hart*, 13 Iowa, 515; *Bill v. Fleming's Exec's*, 12 N. J. Eq. 490; *Dexter, Horton et al. v. Schwabacher Bros. et al.*, 5 Wash. Rep. 344. And the same ruling prevails in New Hampshire, Texas and some other states.

Where not bound by former decisions, or following, blindly, the decisions of other states, based upon precedents, many states have adopted the rule I here contend for, and give force to the intention of legislatures in providing laws for the equitable distribution of insolvent estates.

Where a part only of the creditor's claim is secured by collateral, he is and should be protected in his security. His vigilance and foresight are rewarded to the extent that he exercised it, but no further. Before realizing upon the security, the whole debt is due. Where he has sold the securities and received money, the debt for the payment of which he took the security is paid *pro tanto*,—to that extent extinguished. What remains, and what remained in this case as the debt of the insolvent estate, at the time of the application for a dividend, was the balance remaining

unpaid after applying the proceeds of the collateral, and as to that the creditor had only the rights of other creditors,—to have it paid *pro rata.*

My conclusion appears to be in harmony with the intention of the legislature. There certainly is nothing in the statute militating against this view of the law. The following occurs in section 4795, Mills' Stats.: "Upon each and every settlement of the accounts of any executor or administrator, it shall be the duty of the court to ascertain the whole amount of moneys which shall have come into the hands of such executor or administrator, belonging to the estate of the deceased, and the whole amount of debts established against such estate, and if there be not sufficient to pay the whole of the debts, the moneys aforesaid, or such part thereof as the court may direct, shall be apportioned among the several creditors, *pro rata,* according to their several rights as established herein ; and thereupon the court shall make an order directing such executor or administrator to pay out such moneys according to such apportionment, and the court, upon each and every settlement, shall proceed in like manner, until the whole debts be paid, or the assets exhausted; but no dividend shall, in such case, be ordered, which may probably exceed the *pro rata* amount due such several creditors, upon the allowance of all existing demands against the estate; and the court may, in its discretion, refuse to direct any payment or distribution, until the expiration of one year from the issuing of letters."

It will be observed that the language of the statute, in both instances, is *debts* of the estate, not claims allowed against the estate. The doctrine contended for by appellant would seem to violate, if not the letter of the statute, its evident intention,—that dividends should be paid *pro rata* upon the *debts* of the estate. Consequently there is authority both without and in the statute for the views here held. They are, at any rate, sustained by equity and reason. The rule contended for by appellant would work gross injustice by giving to one creditor full payment for the unsecured

balance, while an unsecured creditor would get but a fraction.

It may be proper to add that the legal conclusions here expressed are limited to the distribution of the assets of insolvent deceased parties, and that as to cases of voluntary assignments no opinion is expressed.

The judgment of the district court must be affirmed.

*Affirmed.*

BISSELL, J., specially concurring.

I assent to the affirmance of this judgment. My concurrence does not extend to an indorsement of the reasoning of the principal opinion, nor to the statement of the rule which prevails both in England and in this country respecting the distribution of the assets either of insolvent assignors or of decedents who have died insolvent, and whose estates have passed into the hands of their representatives. I should be contented with a simple suggestion that the case was controlled by a decision of the supreme court decided at its January term (*Erle v. Lane*, 22 Colo. 273) if the affirmance had been put by the learned judge simply on the authority of that case and an acceptance of its doctrine. It goes farther, and while in terms it directly declares that the conclusions are limited to the distribution of the assets of insolvent decedents, yet the whole tenor and course of the reasoning would indicate the opinion of the court to be that the rule was applicable in all cases where a question arose between general creditors and those holding collateral securities, who likewise had a claim on an assigned estate for the purposes of dividend and distribution. Such is not the opinion of the majority of the court. In justice to ourselves, it is proper to say when this case was first argued and submitted, I prepared an opinion, which was concurred in by Judge Thomson, reversing the judgment and holding the creditor entitled to a dividend on his entire claim, regardless of the value of his collaterals, and regardless of the fact that he may have collected and realized on some of them subse-

quent to the time he proved his claim. This principle was announced, as we believed, in obedience to both the weight and the current of authority in this country and in England. *Mason v. Bogg*, 2 Myl. & C. 443; *Kellock's Case*, 3 Ch. App. 769; *Lewis, Trustee, v. United States*, 92 U. S. 618; *People v. Remington*, 121 N. Y. 328; *Furness et al. v. The Union Nat. Bank*, 147 Ill. 570; *Allen v. Danielson*, 15 R. I. 480; *Patten's Appeal*, 45 Pa. St. 151; *Miller's Estate*, 82 Pa. St. 113; *Miller's Appeal*, 35 Pa. St. 481; *Brown v. Merchant's Bank*, 79 N. C. 244; *Citizens Bank v. Patterson*, 78 Ky. 291; *Third Nat. Bank of Detroit v. Haug*, 82 Mich. 607; *Kellogg & Co. v. Miller*, 22 Ore. 406; *Moses v. Ranlet*, 2 N. H. 488; *Findlay v. Hosmer*, 2 Conn. 350; *Bank Cases*, 92 Tenn. 437; *First Nat. Bank of Peoria v. Com. Nat. Bank*, 151 Ill. 308.

I have no purpose, in this special concurrence, to criticise the opinion of the supreme court or indulge in any attempt to subvert its authority or detract from its force. That court concedes the rule to be as I have stated it in matters of assignment. It has attempted, however, to draw a very broad distinction between this class of cases and those where dividends are to be declared by an administrator on claims allowed against an estate, where the creditor procuring the allowance holds collaterals, some or all of which he converts prior to the time a particular dividend may be declared. It is conceded he may hold the collaterals and take his dividend upon his entire claim, thus squarely putting a limitation on his right to receive dividends on this totality, on the reduction of his collaterals into money after proof and allowance and before dividend. The principle which the opinion states as the basis of the distinction between claims held against decedents' estates and those held against insolvent assignors does not meet with my approval. This I am quite at liberty to state, because the case is not put on that ground. I am unable to see any distinction between the rights and interests of a creditor in the estate of an insolvent assignor and in the estate of an insolvent decedent. It is true in the first the estate has passed to the trustee for the benefit of creditors by

the voluntary act of the assignor, and the trustee holds it for distribution under and by virtue of the terms of the deed and subject to its limitations. The only difference between the holding of the trustee and the holding of the administrator and the heir is simply that in the one case the trustee holds by virtue of the voluntary act of the assignor, and in the other the administrator and the heir hold by virtue of the powers and rights devolved on them by operation of law. The administrator takes the personal estate in trust, *first*, for the benefit of the creditors; and, *second*, for distribution among those who may be entitled to share in the estate. The creditor, of course, has no lien on the realty in the technical sense, yet in the broad, general sense, he has both a lien and a right, for if the personal estate be insufficient to pay the debts, the realty may be subjected to sale and the proceeds devoted to the liquidation. It strikes me that it is not a question of the character of the holding by the voluntary or involuntary act of the trustee, but the question is simply one of time;—when do the rights of the creditor become fixed? When is he entitled to dividends on the totality of his claim,—as it exists when proved, or as it exists when the dividend is declared? It seemed to me at the time this case was originally before the court the true rule was expressed in the *Chemical Nat. Bank v. Armstrong*, 59 Fed. Rep., in the 121 N. Y., 147 Ill., and in the *Kellock Case*. Whatever cloud may be cast on the English doctrine by the comments of the principal opinion, it remains undoubtedly true the case of *Greenwood v. Taylor*, 1 Russ. & M. 185, is in no manner the law of England to-day. I thought it overruled by the case of *Mason v. Bogg*, but I know it is overruled and distinctly disapproved of and set aside by the *Kellock Case*, in the 3 Ch. App., which was decided in 1868. I never felt the force of the case of *Amory v. Francis*, 16 Mass. 309, notwithstanding the halo cast about the distinguished name of the judge who wrote the opinion. It was rested solely on the *Greenwood Case*, which has been overruled. It is not supported by very cogent reasons, nor

by a clearness and lucidity of statement which is persuasive and convincing. That opinion neither announces the law in England nor in this country, nor can its reasoning be applied or its decision used to support the rule which is to regulate the distribution of the assets of an insolvent who is deceased. It can never be useful for any purpose save to uphold the application of a similar rule in the distribution of the assets of an insolvent assignor. To this I should never consent.

The whole reasoning of the *Kellock Case* with respect to the time when the rights of a creditor become fixed is very convincing to me, and I cannot exactly see how in the case at bar, whatever may have been the facts in the case in the supreme court, as to which I am unadvised, any other rule can be correctly applied. In the present case Sullivan's claim was filed in the county court and allowed on the 20th of December, 1892, at which time no part or portion of his collaterals had been reduced to money, and he was, according to the terms of that allowance, entitled to a dividend on the sum total of his claim. It is difficult for me to understand by what process of reasoning he can be held to have lost the rights he thereby acquired by the subsequent reduction of his collaterals. Of course, I understand that the right a creditor has both to reduce his collaterals and pursue his debtor by a judgment and execution until his claim is satisfied is subject to the limitation that the creditor may only have one satisfaction. Both remedies, as the supreme court of the United States says, are always open and may be pursued concurrently and along converging lines until satisfaction is the result. It is likewise probably true, if the creditor realizes a percentage from his collaterals, his right to enforce the collection of his debt by execution would be limited to the sum due after the application of the sum realized. Where a creditor has two funds to which he can resort for payment, and another creditor has a lien on only one, equity will not always compel the first creditor to resort to the fund on which the second has no lien. This principle is limited in its application, as is stated in the *Remington Case*,

to those cases where it will not operate to the prejudice of the creditor. In other words, it may never be so used as to deprive the creditor of the absolute payment of his debt. As I understand it, when a claim is presented to the county court for allowance, it is like the commencement of a litigation before a justice. The suit is heard without pleadings, and on its conclusion it is to be determined, and the entry of allowance has the force and effect of a judgment. It is true no execution may issue for its enforcement, nor could one issue if the creditor had reduced his claim to judgment during the lifetime of the decedent. In that case, he would be compelled to file his judgment in the county court, have it allowed like an ordinary claim and take his dividend as might be. This is a matter of statutory regulation. General Statutes, 1883, secs. 3612, 15 and 18.

The effect of this legislation is to suspend the creditor's rights to enforce his judgment by an execution. I am quite unable to understand why the death of a party should be taken to interfere with the creditor's legal rights. Had the debtor lived, execution could have issued. He could have collected as much as might be of the debt out of his assets and resort to the collaterals for the balance. Under the decision of the supreme court he may reach the same end, subject only to the limitation that he must hold the collaterals until after the dividend is declared. It occurs to me this rule will operate to the prejudice of the estate, rather than to its advantage. The delay in the reduction of the collaterals may result in the diminution of the amount which would otherwise be applicable to the liquidation of the debts of a decedent, and by the time the estate is wound up there may not be what there might have been at the commencement of the administration, a strong reason for the representative to redeem the collateral by the payment of the debt, that it might be used for the payment of the general claims against the estate. How the county court acquires the right to declare a dividend on any other sum than the amount of the claim as it was allowed, I am unable to perceive. The

claim was in judgment. It was put into that shape by the county court itself. As I view it, the basis for the computation of dividends by that court must be on the one side the claims allowed, which are in the shape of judgments, and on the other the money which has been collected. There are no other elements which can enter into the computation. I am unable to see how, by petition or otherwise, the county court can ascertain and take cognizance of the fact that the creditor has collected his collaterals and reduced the amount of his claim and adjudge him thereby deprived of the right to participate in a dividend calculated on the total of the judgments. Of course, I know there is no insuperable difficulty. In the enforcement of the doctrine laid down by the supreme court, I am not prepared to say the county court might not be authorized, on petition in the due course of administration, to set aside the allowance and reënter it perhaps for the sum then due the creditor. Having thus constructed a new basis or factor for the purposes of dividend and payment, the court can then reach the result which it declares is the right of a creditor. But it does seem to me, however, that this is the only procedure which can be adopted to bring it about. No such course was taken in the present case, and therefore, for this reason, if for no other, I do not approve the practice which the opinion would seem to sanction. It occurs to me, as suggested by some of the cases, as more likely to be productive of litigation and disadvantage than of gain. With its policy I have nothing to do. It is the law of the state and I assent to it. This opinion is written in justification of the position which this court originally took.

The judgment must be affirmed.

*Affirmed.*