Bissell, J.,
specially concurring.
I asseut to the affirmance of this judgment. My concurrence does not extend to an indorsement of the reasoning of the principal opinion, nor to the statement of the rule which prevails both in England and in this country respecting the distribution of the assets either of insolvent assignors or of decedents who have died insolvent, and whose estates have passed into the hands of their representatives. I should be contented with a simple suggestion that the case was controlled by a decision of the supreme court decided at its January term (Erle v. Lane, 22 Colo. 273) if the affirmance had been put by the learned judge simply on the authority of that case and an acceptance of its doctrine. It goes farther, and while in terms it directly declares that the conclusions are limited to the distribution of the assets of insolvent decedents, yet the whole tenor and course of the reasoning would indicate the opinion of the court to be that the rule was applicable in all cases where a question arose between general creditors and those holding collateral securities, who likewise had a claim on an assigned estate for the purposes of dividend and distribution. Such is not the opinion of the majority of the court. In justice to ourselves, it is proper to say when this case was first argued and submitted, I prepared an opinion, which was concurred in by Judge Thomson, reversing the judgment and holding the creditor entitled to a dividend on his entire claim, regardless-of the value of his collaterals, and regardless of the fact that he may have collected and realized on some of them subse *12 quent to the time he proved his claim. This principle was announced, as we believed, in obedience to both the weight and the current of authority in this country and in England. Mason v. Bogg, 2 Myl. & C. 443; Kellock’s Case, 3 Ch. App. 769; Lewis, Trustee, v. United States, 92 U. S. 618; People v. Remington, 121 N. Y. 328; Furness et al. v. The Union Nat. Bank, 147 Ill. 570; Allen v. Danielson, 15 R. I. 480; Patten’s Appeal, 45 Pa. St. 151; Miller’s Estate, 82 Pa. St. 113; Miller’s Appeal, 35 Pa. St. 481; Brown v. Merchant's Bank, 79 N. C. 244; Citizens Bank v. Patterson, 78 Ky. 291; Third Nat. Bank of Detroit v. Haug, 82 Mich. 607; Kellogg & Co. v. Miller, 22 Ore. 406; Moses v. Ranlet, 2 N. H. 488; Findlay v. Hosmer, 2 Conn. 350; Bank Cases, 92 Tenn. 437; First Nat. Bank of Peoria v. Com. Nat. Bank, 151 Ill. 308.
I have no purpose, in this special concurrence, to criticise the opinion of the supreme court or indulge in any attempt to subvert its authority or detract from its force. That court concedes the rule to be as I have stated it in matters of assignment. It has attempted, however, to draw a very broad distinction between this class of cases and those where dividends are to be declared by an administrator on claims allowed against an estate, where' the creditor procuring the allowance holds collaterals, some or all of which he converts prior to the time a particular dividend may be declared. It is conceded he may hold the collaterals and take his dividend upon his entire claim, thus squarely putting a limitation on his right to receive dividends on this totality, on the reduction of his collaterals into money after proof and allowance and before dividend. The principle which the opinion states as the basis of the distinction between claims held against decedents’ estates and those held against insolvent assignors does not meet with my approval. This I am quite at liberty to state, because the case is not put on that ground. I am unable to see any distinction between the rights and interests of a creditor in the estate of an insolvent assignor and in the estate of an insolvent decedent. -It is true in the first the estate has passed to the trustee for the benefit of creditors by *13 the voluntary act of the assignor, and the trustee holds it for distribution under and bjr virtue of the terms of the deed and subject to its limitations. The onty difference between the holding of the trustee and the holding of the administrator and the heir is simply that in the one case the trustee holds by virtue of the voluntary act of the assignor, and in the other the administrator and the heir hold by virtue of the powers and rights devolved on them by operation of law. The administrator takes the personal estate in trust, first, for the benefit of the creditors; and, second, for distribution among those who may be entitled to share in the estate. The creditor, of course, has no lien on the realty in the technical sense, yet in the broad, general sense, he has both a lien and a right, for if the personal estate be insufficient to pay the debts, the realty may be subjected to sale and the proceeds devoted to the liquidation. It strikes me that it is not a question of the character of the holding by the voluntary or involuntary act of the trustee, but the question is simply one of time ; — when do the rights of the creditor become fixed? When is he entitled to dividends on the totality of his claim, — as it exists when proved, or as it exists when the dividend is declared? It seemed to me at the time this case was originally before the court the true rule was expressed in the Chemical Nat. Bank v. Armstrong, 59 Fed. Rep., in the 121 N. Y., 147 Ill., and in the Kellock Case. Whatever cloud may be cast on the English doctrine by the comments of the principal opinion, it remains undoubtedly true the case of Greenwood v. Taylor, 1 Russ. & M. 185, is in no manner the law of England to-day. I thought it overruled by the case of Mason v. Bogg, but I know it is overruled and distinctly disapproved of and set aside by the Kellock Case, in the 3 Ch. App., which was decided in 1868. I never felt the force of the case of Amory v. Francis, 16 Mass. 309, notwithstanding the halo east about the distinguished name of the judge who wrote the opinion. It was rested solely on the Greenwood Case, which has been overruled. It is not supported by very cogent reasons, nor *14 by a clearness and lucidity of statement which is persuasive and convincing. That opinion neither announces the law in England nor in this country, nor can its reasoning be applied or its decision used to support the rule which is to regulate the distribution of the assets of an insolvent who is deceased. It can never be useful for any purpose save to uphold the application of a similar rule in the distribution of the assets of an insolvent assignor. To this I should never consent.
The whole reasoning of the Kelloek Case with respect to the time when the rights of a creditor become fixed is very convincing to me, and I cannot exactly see how in the case at bar, whatever may have been the facts in the case in the supreme court, as to which I am unadvised, any other rule can be correctly applied. In the present case Sullivan’s claim was filed in the county court and allowed on the 20th of December, 1892, at which time no part or portion of his collaterals had been reduced to money, and he was, according to the terms of that allowance, entitled to a dividend on the sum total of his claim. It is difficult for me to understand by what process of reasoning he can be held to have lost the rights he thereby acquired by the subsequent reduction of his collaterals. Of course, I understand that the right a creditor has both to reduce his collaterals and pursue his debtor b3r a judgment and execution until his claim is satisfied is subject to the limitation that the creditor may only have one satisfaction. Both remedies, as the supreme court of the United States says, are alwa3?s open and may be pursued concurrently and along converging lines until satisfaction is the result. It is likewise probably true, if the creditor realizes a percentage from his collaterals, his right to enforce the collection of his debt by execution would be limited to the sum due after the application of the sum realized. Where a creditor has two funds to which he can resort for payment, and another creditor has a lien on only one, equity will not always compel the first creditor to resort to the fund on which the second has no lien. This principle is limited in its application, as is stated in the Remington Case, *15 to those cases where it will not operate to the prejudice of the creditor. In other words, it may never be so used as to deprive the creditor of the absolute payment of his debt. As I understand it, when a claim is presented to the county court for allowance, it is like the commencement of a litigation before a justice. The suit is heard without pleadings, and on its conclusion it is to be determined, and the entry of allowance has the force and effect of a judgment. It is true no execution may issue for its enforcement, nor could one issue if the creditor had reduced his claim to judgment during the lifetime of the decedent. In that case, he would be compelled to file his judgment in the county court, have it allowed like a.n ordinary claim and take his dividend as might he. This is a matter of statutory regulation. General Statutes, 1883, secs. 3612, 15 and 18.
The effect of this legislation is to suspend the creditor’s rights to enforce his judgment by an execution. I am quite unable to understand why the death of a party should be taken to interfere with the creditor’s legal rights. Had the debtor lived, execution could have issued. He could -have collected as much as might be of the debt out of his assets and resort to the collaterals for the balance. Under the decision of the supreme court he may reach the same end, subject only to the limitation that he must hold the collaterals until after the dividend is declared. It occurs to me this rule will operate to the prejudice of the estate, rather than to its advantage. The delay in the reduction of the collaterals may result in the diminution of the amount which would otherwise be applicable to the liquidation of the debts of a decedent, and by the time the estate is wound up there may not be what there might have been at the commencement of the administration, a strong reason for the representative to redeem the collateral by the payment of the debt, that it might be used for the payment of the general claims against the estate. How the county court acquires the right to declare a dividend on any other sum than the amount of the claim as it was allowed, I am unable to perceive. The *16 claim was in judgment. It was put into that shape by the county court itself. As I view it, the basis for the computation of dividends by that court must be on the one side the claims allowed, which are in the shape of judgments, and on the other the money which has been collected. There are no other elements which can enter into the computation. I am unable to see how, by petition or otherwise, the county court can ascertain and take cognizance of the fact that the creditor has collected his collaterals and reduced the amount of his claim and adjudge him thereby deprived of the right to participate in a dividend calculated on the total of the judgments. Of course, I know there is no insuperable difficulty. In the enforcement of the doctrine laid down by the supreme court, I am not prepared to say the county court might not be authorized, on petition in the due course of administration, to set aside the allowance and reenter it perhaps for the sum then due the creditor. Having thus constructed a new basis or factor for the purposes of dividend and payment, the court can then reach the result which it declares is the right of a creditor. But it does seem to me, however, that this is the only procedure which can be adopted to bring it about. No such course was taken in the present case, and therefore, for this reason, if for no other, I do not approve the practice which the opinion would seem to sanction. It occurs to me, as suggested by some of the cases, as more likely to be productive of litigation and disadvantage than of gain. With its policy I have nothing to do. It is the law of the state and I assent to it. This opinion is written in justification of the position which this court originally took.
The judgment must be affirmed.

Affirmed.