CHEMICAL CO. v. EDWARDS.

(Filed September 27, 1904).

INSOLVENCY—*Executors and Administrators—Contracts—The Code, sec. 1416.*

> Where a debtor holds certain notes as the property of the creditor, to be applied on his debt when collected, any amount collected on the notes is part payment of the debt and the debtor shares in the funds belonging to the administrator only in proportion to the balance of the debt due.

ACTION by the Virginia-Carolina Chemical Company against B. W. Edwards, heard by *Judge Frederick Moore,* at December Term, 1903, of the Superior Court of GREENE County.

Controversy submitted without action, under section 567 of The Code.

In order to present the point decided in this Court it will be necessary to state only the substance of the case agreed. The plaintiff in January, 1902, sold and delivered to George W. Sugg, intestate of the defendant, several lots of fertilizers, for which Sugg gave his notes in different amounts and due on the dates (in 1902) therein mentioned. It was stipulated in the written contract of the parties, annexed to the case agreed, that the fertilizers and all the proceeds of any sales of the same, "including cash, notes, open accounts and collections," should be kept separate and held by Sugg for the use and benefit of the plaintiff and subject to its order, and should be and remain its property until the entire indebtedness of Sugg had been paid. It is also provided by the contracts that the plaintiff should have the right to enforce payment of Sugg's notes given to it for the fertilizers at any time after maturity, whether the fertilizers had all been sold and paid for or not, and that Sugg should receive as his full compensation for selling fertilizers and making collections the difference between the price he paid for the fertilizers and the price at which he sold them. It is provided further, as follows: "That the customer (George W. Sugg) will pay over to the company (plaintiff) all the cash proceeds of sales collected at the time of the sales, and on or before the first day of May, 1902, will send to the company a complete list of his time sales, and endorse and surrender to the company all notes received by him from the purchasers of said fertilizers, which notes are to be returned by the company to him, if no contrary reason arises, for the purpose only of collection and remittance to the company." Sugg guaranteed the payment in full of all sums due for fertilizers sold at the prices stated. At the time of his death Sugg had in his possession and held in trust for collection,

for the use and benefit of the plaintiffs, under the terms and conditions of said contracts, all the notes and accounts taken by him for fertilizers, and after his death the defendant administrator received notes and accounts on the same trusts and conditions. The case agreed contains the following clauses: "1. That at the time of the death of Sugg and the qualification of his administrator, there was justly due from Sugg on his indebtedness, evidenced by said notes unpaid, to the said Virginia-Carolina Chemical Company, the sum of $1,747.51, as evidenced by said notes, and due respectively as follows: Three notes due November 15, and three notes due December 1, 1902." "2. That since the death of Sugg (November, 1902), the defendant administrator has collected on said notes and accounts so held by him and paid over to the said Chemical Company, to be credited upon said indebtedness, the sum of $700, of date January 22, 1903; $148.55, April 22, 1903, leaving a balance due at the present time, after giving credit for $87.60 worth of guano returned on said indebtedness, of $...." The estate of Sugg is insolvent, and the general creditors will not therefore receive the full amount of their claims. The plaintiff contends that it should be allowed to prove against the estate of Sugg the full amount of his indebtedness to it at the time of his death, without any abatement or deduction on account of the payment made or the proceeds of collections remitted since his death, by the administrator; and the defendant contends that the plaintiff is entitled to prove only for the original claim, less the amount remitted by the administrator. The Court adjudged that the plaintiff should prove only for the balance due after deducting from the original indebtednes the amount of the payment, and the plaintiff excepted and appealed.

*L. V. Morrill* and *Pou & Fuller,* for the plaintiff.
*George M. Lindsay,* for the defendant.

WALKER, J., after stating the facts. The plaintiff claims that it is entitled to receive from the defendant, as administrator of its debtor, Sugg, out of the assets of the latter's estate, a dividend on the full amount of its debt, that is, on the debt unreduced by the amount which was received from the defendant, and which represented collections made by him on the notes and accounts held by his intestate for fertilizers which he sold. This, it is insisted, is the rule which the courts of equity adopt and apply 'in the adjustment of claims against the estates of insolvent debtors, as distinguished from the rule in bankruptcy. The former rule may be thus stated: If a creditor has a right to resort to a fund which is open to him alone, he shall not be thereby precluded from coming in upon the assets of an insolvent estate which are common to all the creditors of the deceased debtor and obtaining a dividend on the full amount of his debt, subject to the common sense and necessary qualification that he does not receive more than the sum due; and the rule in bankruptcy is that the creditor shall be entitled to prove only for the residue, the right to resort to the special fund or to any collateral security held by him being treated *pro tanto* as a payment. Bispham Eq. (6 Ed.), pp. 460, 461.

The counsel for the plaintiff argue that the rule by which the adjustment should be made as between a secured creditor, his insolvent debtor's estate and the other creditors of the latter, should not be at all different from that which obtains in the settlement and payment of claims against an insolvent living debtor, who has made a general assignment for the benefit of his creditors, where one or more of the creditors has been previously secured and the assignee has in his hands a fund for distribution, and that the adjustment should be acording to the principle laid down in *Winston v. Biggs,* 117 N. C., 206.

CHEMICAL CO. *v.* EDWARDS.

The defendant, on the other hand, contends that the plaintiff should prove only for the amount of its claim left after deducting the sum received from the defendant, according to the rule in bankruptcy.

Strong arguments have been advanced by many of the Courts in favor of the adoption of the former rule, and it is asserted that there is no principle of equity which can take from the diligent creditor any part of his security until he is completely satisfied. He has the right to proceed against both the security he may hold and the general estate of his debtor, and to make the best he can of both. This rule must be conceded to apply when the debtor is living, and it is said that no good reason can be given why it should not apply equally as well if the debtor dies insolvent. *Brown v. Bank,* 79 N. C., 244; *People v. Remington,* 121 N. Y., 328, 8 L. R. A., 458; Bispham, *supra,* p. 461; *Pace v. Pace,* 95 Va., 792, 44 L. R. A., 459; *Merrill v. Bank,* 173 U. S., 140; *Kellogg v. Miller,* 22 Or., 406, 29 Am. St. Rep., 618; *Kelloch's case,* L. R., 3 Ch., App., 769; *Hess' Estate,* 69 Pa. St., 272; *Furness v. Bank,* 147 Ill., 570; *Day v. Graham,* 97 Mo., 398; *Jennings v. Loeffler,* 184 Pa., 318; *Knowle's Petition,* 13 R. I., 90; *Bank v. Armstrong,* 59 Fed. Rep., 378, 28 L. R. A., 231. It is further argued that the rule in bankruptcy is peculiar to that court, and was adopted for the purpose of preventing even an indirect preference of one creditor over the other creditors of the bankrupt, and that no such reason exists in a forum the law of which allows preferences to be made by the debtor as between his creditors. The defendant meets this argument, and the authorities cited to support it, with the assertion that whatever may be the law elsewhere, this Court has recognized and applied, as the true rule, the one which obtains in the courts of bankruptcy, and for this position he cites and relies on *Creecy v. Pearce,* 69 N. C., 67; *Moore v. Dunn,*

92 N. C., 63, and *Askew v. Askew,* 103 N. C., 285, and The Code, sec. 1416, by which the administrator is required to pay, as a first class, having priority over all others, the debts which by law have a specific lien on property to an amount not exceeding the value of such property.

The question raised by the contentions of the respective parties is a very interesting and important one, but we are not put to the necessity of choosing between the two rules in this case that which we deem to be the best, if, as contended by the defendant's counsel, a choice has not already been made by this Court in the cases cited by him. We leave the question entirely open for future consideration, without the expression or intimation of an opinion as to what the law is or should be in such a case, as we do not think that either of the rules is applicable to the facts of this case. Our decision must depend upon the special provisions of the contract and the facts stated in the case agreed. By the terms of the former the fertilizers and all notes and accounts held by Sugg for such as were sold by him remained the property of the plaintiff, and were held by him and afterwards by his administrator in trust for the plaintiff's use and benefit. The amount collected by the administrator on the notes and accounts was paid over to the plaintiff to be credited upon Sugg's indebtedness, and it is expressly stated in the case that it was so credited, as follows: The sum of $700 on January 22, 1903, and the sum of $148.55 on April 22, 1903, and there was also credited $87.50 for guano returned, "leaving a balance due on said indebtedness at the present time" (December 18, 1903, the date of the case agreed) of so many dollars, the amount not being given, but being, as the case shows, the difference between $1,747.51 and the total amount of the payments, including the item of $87.60, which would be in round numbers, $800. So that the notes and accounts in the hands of

the administrator, which he afterwards collected, and the proceeds of which collection he remitted to the plaintiff, belonged to the latter, according to the terms of the agreement (*Drill Co. v. Allison,* 94 N. C., 548), and only needed to be converted into money to ascertain their value and the amount to be credited on the debt. They were in no sense collateral securities held by the plaintiff as a creditor of Sugg. As soon as they were collected by the administrator, as the agent of the plaintiff, and certainly as soon as the proceeds were received by the latter, the debt was paid *pro tanto.* This result followed, not only by reason of the provisions of the contract, but the parties have actually agreed that the money was so applied and the debt reduced to the sum of about $800. Can we say that a fact which the parties have agreed on in the case shall not be as they have stipulated it shall be, and shall not have its intended effect, or that the law so determines the rights of the parties as to defeat the intention which has been clearly expressed by them? If the plaintiff was the owner of the notes and accounts and they were collected and the proceeds actually applied to the payment of the debt by the plaintiff, leaving a certain balance due by the defendant as administrator of Sugg, we do not see any ground upon which the plaintiff can claim that the facts bring the case within the said rule of equity, even if it has been adopted by this Court. He was not the holder of any collateral security, mortgage, lien or pledge within any accepted definitions of those words. By the very terms of the contract, the debtor, Sugg, was excluded from any interest in the notes and accounts until the debt should be paid in full, and until then they belonged to the plaintiff. It was competent to the parties to make such an agreement, if they chose to do so, and having so chosen, we must construe their contract as it is written. In the case of *Bank v. Alexander,* 85 N. C., 352. it appeared that

the debtors in 1876 made their several promissory notes to
one Brem, who immediately endorsed them to the bank for
the accommodation of the debtors. The endorser died in the
same year and the defendant qualified as his administrator.
In the next year the debtors executed a general assignment
for the benefit of their creditors, and a dividend was paid by
the assignee to the plaintiff, who afterwards claimed the
right to prove its entire debt against a fund in the hands of
the defendant as administrator of the endorser. It was held
that the payment extinguished the debt *pro tanto,* the Court,
in this connection, saying: "Here, funds provided by the
principal debtors who are primarily liable, have been appro-
priated to their own indebtedness, nearly two-thirds of which
is thus extinguished, and the estate of the testator, their
surety, relieved of liability to that extent. The present con-
tention is to revive the discharged indebtedness against the
surety for the purpose of obtaining a larger dividend from
his estate. The measure of the provable debt is what re-
mains of it unpaid, and as the discharged part could not be
asserted against the principal, still less can it be against
the surety upon his subsidiary liability." The case was dis-
tinguished from one in which there is a fund to be distrib-
uted among creditors under a general assignment made be-
fore there has been any actual application by a creditor of
securities held by him to the payment of a part of his debt,
where he is entitled to prove for the whole debt although
after the assignment is made there is such an application,
and for the reason that by the assignment each creditor
becomes the equitable owner of his share of the assigned
property and this vested interest cannot be impaired by any
subsequent payment. *Brown v. Bank,* 79 N. C., 244; *Win-
ston v. Biggs,* 117 N. C., 206. If the payment made under
the circumstances stated in *Bank v. Alexander,* reduced the
debt by the amount received from the assignee, so that only

the balance was provable, it must surely be that the payment in this case produces a like result without regard to the rule in equity or in bankruptcy to which we have referred.

There is no error in the judgment of the Court upon the case agreed.

Affirmed.