EDMUND HAUG, ASSIGNEE OF GEORGE MORLEY, v. THE THIRD NATIONAL BANK OF DETROIT.

*Assignment for benefit of creditors—Enrolled vessels—Prior liens on, recorded as provided by act of Congress, precede assignment— Conformity to State recording laws unnecessary.*

1. A general assignment for the benefit of creditors, covering enrolled and licensed vessels belonging to the assignor, which is not recorded in the office of the collector of customs where such vessels are registered or enrolled, gives the assignee no right to the vessels as against a mortgagee whose mortgage is thus recorded.

2. The act of Congress (Rev. Stat. § 4192) in reference to the recording of mortgages upon enrolled and licensed vessels supersedes the statute of this State providing for the recording of mortgages in the office of the township or city clerk, and no presumption of fraud which would arise under the State law because of the failure to so record them can prevail against their validity.

Appeal from Wayne.   (Reilly, J.)   Argued October 9, 1889.   Decided November 8, 1889.

Bill filed to impeach the transfer of certain property of the insolvent debtor to defendant, and for appointment of receiver.   Defendant appeals from an order appointing receiver.   Order vacated.   The facts are stated in the opinion.

*Edwin F. Conely*, for complainant.

*DeForest Paine* (*Cutcheon, Stellwagen & Fleming,* of counsel), for defendant.

[The claims of counsel are stated in the opinion.— REPORTER.]

MORSE, J.   On March 1, 1889, George Morley, of Detroit, being financially embarrassed, executed a general assignment for the benefit of his creditors, and in such instrument appointed the complainant his assignee.   This assignment was made about 10 o'clock A. M.   Before said assignment, but on the same day, at 9 o'clock A. M., the Third National Bank of Detroit put on record, in the office of the collector of customs at Detroit, where the vessels were registered and enrolled, bills of sale of the schooner "Colorado," the steam-barge "R. C. Brittain," ànd the schooner "Reindeer," all owned by the said Morley.   It is admitted that the purpose for which Morley executed and delivered these bills of sale, as well as other instruments of conveyance of property, to the bank, was to secure the payment by Morley of any or all indebtedness owing by him to said bank at their date, or which might thereafter become due or owing to it, and all liabilities to said defendant by reason of any overdraft, discount, indorsement, guaranty, note, bill, bond or other instrument in writing.   These bills of sale of the Colorado and the R. C. Brittain were executed and delivered March 5, 1888, a year before their recording, as above noted.   They were not filed or recorded in any other public place or office.   The bill of sale of the Reindeer was executed and delivered October 3, 1888.   The possession of these vessels remained in Morley until his assignment.   Since then they have been in the possession of the assignee.

April 2, 1889, the complainant, as assignee aforesaid, filed his bill in the Wayne circuit court, in chancery,

attacking the validity of the transfer of these vessels to the defendant, as well as other transfers of property, and praying for the appointment of a receiver, the issue of injunction, etc. It is alleged in this bill that Morley, while apparently doing a prosperous business, was in fact financially embarrassed, and obliged to borrow a large amount of money of the defendant; that his straitened and embarrassed situation was fully known to the defendant when these bills of sale and other securities were taken, and continued to be known to them up to the time of his assignment; that the defendant, with this knowledge of Morley's financial condition, connived and colluded with the said Morley for the purpose of making it appear to the public, and particularly to the other creditors of Morley, both present and future, that said Morley was not in the straitened and embarrassed financial condition in which in fact he was, and for the purpose of enabling said Morley to obtain a credit greater than his financial responsibility justified, and agreed to and did purposely withhold from record and concealed from the knowledge of the public, and especially of the other creditors of said Morley, the fact of the execution of these bills of sale and other conveyances; that said defendant was notified by Morley of his intended assignment, and thereupon it recorded these instruments, just before the execution of such assignment; that the creditors of Morley were ignorant of the dealings between Morley and the defendant, as above described, until these instruments were put on record. That the total liabilities of Morley aggregated about $136,000; a large amount of said indebtedness being contracted since March 1, 1888, the date of two of these bills of sale, and a good share of the same since the date of the bill of sale of the Reindeer; that the assets will not exceed $78,000, or about $35,000 excluding the property transferred to defendant,

consisting of real estate valued at $30,000, and the vessels, worth about $13,000.

That the defendant pretends that it has claims against Morley, secured by said transfers, to the amount of $17,000 or more, and insists that its claims upon the property covered by said transfers are superior in law and equity to those of the complainant, as assignee aforesaid, and threatens to take possession of said vessels, and to sell the same, and to deprive him, and the creditors of said Morley, from all share in the proceeds of such sale, and to enforce its claims against the real estate described in the other conveyances.

He avers that these claims are fraudulent and unlawful, as against the other creditors and the complainant, as their trustee; that these claims cast doubt and uncertainty upon complainant's title as assignee, thereby injuring the sale of the same, and seriously hindering, if not wholly preventing, the complainant from realizing anything from said property for the benefit of Morley's general creditors.

He prays that the transfers may all be declared void, as against the creditors of Morley, and that defendant be decreed to assign and convey its pretended interest under these transfers to the complainant, as the trustee of the creditors, and that it be perpetually enjoined from enforcing its claims under such transfers; that a receiver be appointed to take control, care, and charge of said vessels, or, in case of sale of them, or any of them, of the proceeds therefrom, to await the order and decree of the court.

The defendant answered, admitting the execution and delivery of the transfers as of the dates set forth in the bill, but denying that it was aware of the straitened or embarrassed financial condition of Morley at the time they were taken, and avers that it had reason to believe,

and did believe, that he was solvent up to the time of his assignment; that on March 1, 1889, Morley owed defendant $15,000 on his individual note, and $13,976.91 upon other commercial paper, as maker, indorser, or otherwise. It denies that it connived, colluded, or agreed with Morley to keep such transfers from record, or from the knowledge or notice of his creditors, or that it ever connived or colluded with him for any purpose.

It avers that when it learned of the assignment the defendant demanded the possession of said boats of Morley and complainant; which possession was denied. It also avers that said securities are valid; that it is entitled to hold the same, and to proceed, without the interference or hindrance of said complainant, or any one, to legally enforce the same, and apply the proceeds upon the said indebtedness of Morley to it.

That defendant has a paid-up capital of $300,000. Demurs to the bill for want of equity.

The answer fails to explain why these bills of sale were not recorded until the morning of the day the assignment was executed.

Upon motion for the appointment of a receiver, heard on bill and answer, it was ordered, April 22, 1889,—

"That Archibald G. Lindsay be appointed receiver of said vessels; that he have authority to sell the same, at public auction, to the highest bidder; and that he hold the proceeds of such sale subject to the further order of this court."

A bond in the sum of $15,000 was required of the receiver. From this order the defendant appeals to this Court.

The showing in the bill puts the value of the whole property transferred to defendant at $43,000. The answer does not dispute this value, and asserts the claim of the defendant against Morley to be, in all, $28,976.91.

The transfers are acknowledged not to be absolute, as the bills of sale purport to be on their face, but to have been given in fact as security for the payment of this sum. The defendant claims that the laws of this State in relation to the recording of chattel mortgages and bills of sale do not apply to vessels duly licensed and enrolled under the acts of Congress, and that no presumption of fraud which would arise under the State laws because of the failure to record these bills of sale in the office or place required by our statutes can prevail against the validity of these instruments. The answer denies any fraud in fact; and there can be no fraud in law, if its claim be correct.

It has been decided in this and other states, and also in the Supreme Court of the United States, that the act of Congress in reference to the recording of mortgages upon enrolled and licensed vessels supersedes so much of the state laws as refer to the recording of mortgages in the township or city clerk's office. See *Robinson v. Rice,* 3 Mich. 235; *Banks v. Smith,* 7 Wall. 646; *Aldrich v. Ætna Co.,* 8 Id. 491; *Best v. Staple,* 61 N. Y. 71; *Perkins v. Emerson,* 59 Me. 319; *Dent v. Beers,* 19 Ala. 730. It would therefore seem that, actual fraud being denied by the answer, and our State laws not applying to raise a constructive fraud, therefore, the bills of sale, although not absolute, but in effect chattel mortgages, must be here considered as valid, and the title of the defendant, or its lien, under these instruments, not here assailable on the ground of fraud, which is the only basis upon which complainant can ask that the vessels be placed in the hands of a receiver.

The United States statutes provide that no bill of sale, mortgage, hypothecation, or conveyance of any vessel of the United States shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and

persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled. Rev. Stat. U. S. § 4192. Under this statute, the assignment for the benefit of creditors to complainant, being a conveyance, and not recorded as provided by said statute, in the opinion of a majority of this Court, gives the assignee, the complainant, no right to these vessels, as against the defendant.

The order appointing the receiver must therefore be vacated and set aside, with costs to the defendant.

The other Justices concurred.