THIRD NATIONAL BANK OF DETROIT v. EDMUND HAUG,
ASSIGNEE, ETC.

[See 77 Mich. 474; 81 Id. 438.]

*Assignment for benefit of creditors—Dividends—Basis of distri-
bution—Secured creditors.*

The general rule that, when one of two creditors of a common
debtor has two funds out of which he may receive his pay, he
is first to resort to the fund upon which the other creditor has
no lien, and exhaust that before encroaching upon the other,
does not apply to the distribution of the estate of a debtor who
has made a general assignment for the benefit of his creditors.

So *held*, where after the making of such an assignment liti-
gation arose involving the validity of a mortgage upon a por-
tion of the assigned property, held by a .creditor who had
proved its claim under the assignment, whereupon a receiver
was appointed, with power to sell the property and hold the
proceeds pending the litigation. The sale was· made with the
assent of the mortgagee, who appealed from the order
appointing the receiver, which was vacated; whereupon the
mortgagee applied to the court in which the assignment pro-
ceedings were pending for an order that the receiver pay over
the proceeds realized on such sale, which order was granted,
and the money paid to the mortgagee to apply on its claim.
A dividend of 20 per cent. had been paid to the creditors before
the mortgagee had proved its claim, after which the mortgagee
claimed the right to the payment of such dividend upon its
*whole* debt. And it is held that the case is ruled by *Bank v.
Byles*, 67 Mich. 296, and the order for such payment is affirmed.

Appeal from Wayne.  (Reilly, J.)  Argued June 26 and
27, 1890.  Decided October 31, 1890.

Petition by a secured creditor, whose debtor has made
a general assignment for the benefit of creditors, for the
payment of a dividend upon its whole debt, as proved in
the assignment proceedings.  Defendant appeals from an

order directing such payment. Affirmed. The facts are stated in the opinion.

*Orla B. Taylor* and *Edwin F. Conely*, for appellant.
*DeForest Paine*, for petitioner.

[The points of counsel and authorities cited are fully stated in the opinions.—REPORTER.]

CAHILL, J. March 1, 1889, George Morley, of Detroit, Mich., made a general assignment for the benefit of his creditors to Edmund Haug, of Detroit.

The Third National Bank of Detroit, one of the creditors of said Morley, filed its claim on April 26, 1889, which was contested, but upon March 19, 1890, judgment was entered in favor of the bank, for the sum of $22,-178.64, which judgment is still in force. The bank claims to be a secured creditor, and to hold as security for said debt mortgages upon the vessels R. C. Brittain, Colorado, and Reindeer, and upon certain land in the city of Detroit, as well as an assignment of a certain land contract, promissory notes, etc. Defendant denies the right of the petitioner to hold the said mortgages, land contract, notes, etc., as security for the payment of said debt, for reasons immaterial to the present issue, and the matter is now in litigation in the Wayne circuit court, two phases of said case having already been passed upon by this Court. *Haug v. Third National Bank*, 77 Mich. 474 (43 N. W. Rep. 939); *Third National Bank v. Reilly*, 81 Id. 438 (45 N. W. Rep. 830).

Upon April 22, 1889, Archibald G. Lindsay, of the city of Detroit, was appointed receiver of the above-mentioned boats, with power to sell the same, and hold the proceeds to await the result of said litigation. The petitioner took part in the sale of the boats, and upon May 2, 1889, an

order was entered confirming the sale thereof for the sum of $8,610. This sale was consented to by all parties. Petitioner took an appeal to this Court from the order appointing a receiver, and upon November 8, 1889, the order was vacated. Immediately thereafter, petitioner made an application for an order directing the receiver to pay over the money in his hands, less his fees and expenses, to petitioner, and upon December 2, 1889, the receiver was ordered to do so. Thereupon he paid to the bank the sum of $6,989.13, which sum the bank now has in its possession. The other securities still remain available, and the proceeds therefrom, if the bank is successful in the pending litigation, will be applied, together with the proceeds from the sale of the boats, in reduction of the petitioner's debt.

On June 26, 1889, the defendant declared and paid to all creditors except the petitioner a dividend of 20 per cent., petitioner's claim not having been adjudicated at that time. Immediately upon rendition of judgment for petitioner as above set forth, petitioner applied for the payment of a dividend of 20 per cent. upon the whole debt, disregarding the sum already in its possession, and the securities which it holds for the payment of said debt, or a portion thereof. Defendant declined to pay the same on the ground that petitioner was entitled to a dividend upon the residue only, after the securities had been worked out and the proceeds applied. In other words, that petitioner must first resort to its securities, and that it will be entitled to a dividend upon only so much as shall remain unpaid after the proceeds of said securities have been applied upon the debt. The court directed the assignee to pay a dividend upon the whole amount, regardless of the securities and the amount already realized from

82 MICH.—39.

the sale of the vessels, and from this order defendant appeals.

The question here presented is an interesting one. If it were a new one in this State, much could be said, and many authorities cited, in support of either position, but we think the question is ruled by the case of *Southern Mich. Nat'l Bank v. Byles*, 67 Mich. 296. In that case, the bank was the holder of a note made by Kellogg, Sawyer & Co., as accomodation makers for the payees, Chickering & Kyser. The note was negotiated by the payees, and by them and Frank Chickering and Rice & Messmore indorsed; and the day before the note became due, Kellogg, Sawyer & Co. made an assignment. The note was duly protested, and the liability of all the indorsers established. Chickering & Kyser and Frank Chickering each soon after made an assignment. Under the circumstances of that case, then, the bank had, as against Kellogg, Sawyer & Co., the additional security of Chickering & Kyser, Frank Chickering, and Rice & Messmore as indorsers, Chickering & Kyser being the parties for whose benefit the note was made, and who were therefore primarily liable to pay it. In course of time the bank received from the assignee of Chickering & Kyser a dividend of 40 per cent. on the note, which had been proved as a debt against all the insolvent estates. Afterwards, it received a dividend of $88.30 from Frank Chickering's estate. When the assignee of the estate of Kellogg, Sawyer & Co. declared a dividend, he declined to pay such dividend to the bank, except upon the balance that remained unpaid after indorsing the payments made by the assignees of Chickering & Kyser and Frank Chickering. A petition was filed by the bank in the circuit court for the county of Kalamazoo, in chancery, where the Kellogg, Sawyer & Co. estate was being settled, praying that the

assignee be required to pay a dividend upon the entire debt as originally proved against the Kellogg, Sawyer & Co. estate, and without reference to the amount received from the other estates. An order was made in accordance with that prayer, and the case was brought to this Court for review, where the order and decree of the circuit court was affirmed; Mr. Justice SHERWOOD, who wrote the opinion, using this language (p. 308):

" The general rule that, when one of two creditors of a common debtor has two funds out of which he may receive his pay, he is first to resort to the fund upon which the other creditor has no lien, and exhaust that before encroaching upon the other, does not apply to cases like the present."

The reasons advanced by the learned Judge in support of that opinion do not apply with the same force to this case, and yet the principle decided is a controlling one here. The doctrine invoked by the defendant is above all things an equitable one, and can therefore never be appealed to when it would work an injustice. 1 Story, Eq. Jur. § 560. Equity never interferes to deprive one of a substantial legal right, although it will sometimes require one so to exercise his right as not unnecessarily to injure another. Let us see how the claim of defendant, if applied to this case, would affect the legal rights of the petitioner. Before the assignment was made the bank had a legal right to proceed against the debtor personally, and to realize from him the whole of its debt, or as much as it could, without reference to its security. The debtor could not say:

" I have given you security, and you must resort to that before troubling me with your claim."

An assignment does not affect the rights of the creditor. He may still look to the debtor's general estate for the payment of his debt, and if his debt be thus paid, the

property on which he has security will fall back into the body of the debtor's estate, which passed to the assignee, relieved of the creditor's lien. If a part only of the debt be realized from the general estate of the debtor, the creditor may look to his security for the balance. The assignment affects the remedy merely. The creditor can no longer proceed according to the usual forms of law to subject his debtor's property to the payment of his debts. Such property has by the assignment become a trust fund, and the creditor's only remedy is to insist upon the due execution of the trust. But this remedy remains to him, and the fact that he has other security in no way impairs it. The legal right of the bank, then, is to have the trustee convert the trust fund into money, and pay to it its ratable share. If this be done, the dividend of 20 per cent. now due on the bank's claim would amount to $4,435.72, leaving a balance due it of $17,742.92, and, if the securities in its hands realized that sum, it would receive its pay in full. If, however, we apply the doctrine contended for by defendant, and require the bank to credit upon its debt the value of its securities first, there would be a balance due it of $4,435.72, on which it would receive a dividend of 20 per cent., leaving a balance unpaid of $3,548.58. I know of no principle of equity bearing upon the marshaling of securities, the practical application of. which would result in so manifest a deprivation of a legal right.

If the figures here used by way of illustration, merely, be incorrect as applied to this particular case, and if the value of the securities in the hands of the bank be equal to or greater than its debt, the defendant may pay the debt, and take the securities. If this involve any risk or burden, it will not be greater to the defendant than to the bank, and the former cannot require the latter to assume it in the interest of the unsecured creditors. In

no event can the bank receive more than its debt, except as a result of the profitable handling of the securities, and this opportunity the defendant can secure to himself for the benefit of the unsecured creditors if he chooses to assume the attendant risks. As supporting the views here expressed, see *Evertson v. Booth,* 19 Johns. 486; *Brinkerhoff v. Marvin,* 5 Johns. Ch. 320; *Woolcocks v. Hart,* 1 Paige, 185; *Morrison v. Kurtz,* 15 Ill. 193; *Paddock v. Bates,* 19 Ill. App. 470; *Morris v. Olwine,* 22 Penn. St. 441; *Keim's Appeal,* 27 Id. 42; *Miller's Appeal,* 35 Id. 481; *Patten's Appeal,* 45 Id. 151; *Graeff's Appeal,* 79 Id. 146; *Kellock's Case,* L. R. 3 Ch. 769; *Mason v. v. Bogg,* 2 Mylne & C. 446; *Findlay v. Hosmer,* 2 Conn. 350; *West v. Bank,* 19 Vt. 403; *Moses v. Ranlet,* 2 N. H. 488; *Walker v. Baxter,* 26 Vt. 710. The rule contended for has been applied in the case of insolvent estates, and in the settlement of the estates of deceased persons. A different rule prevailed in bankruptcy, based, not upon equitable principles, but upon the express provisions of the statute.

Since this opinion was first prepared, my attention has been called to the case of *People v. Remington,* decided by the court of appeals of New York in June last (24 N. E. Rep. 793), in which Mr. Justice Gray, in a full and exhaustive opinion, which is concurred in by all the judges sitting, approves the doctrine here stated. The opinion of Justice Gray is published in 31 Cent. Law J. 330, supported by a learned note by Mr. S. S. Merrill containing full citation of authorities.

But if anything was needed to enforce the rule here stated as applied to this case, the statute relating to voluntary assignments in this State seems to me to be decisive. How. Stat. chap. 303.

Section 1 of this chapter provides that the assignment shall contain a list of the creditors of the insolvent.

Section 2 requires the list to contain the name and post-office address of each creditor, with a statement of the amount due, as near as may be, over and above all defenses, the actual consideration for the debt, and when contracted, and all securities, and the value thereof, held by each creditor.

Section 4 requires every assignee, within ten days after receiving such trust, to give notice to each creditor, and make and file proof of the service of such notice with the county clerk within ninety days thereafter. The notice shall require creditors to prove their claims within ninety days, or in default thereof the assignee will proceed to distribute the estate without reference to claims not proven when dividends are paid. Before paying any dividend, the assignee is required to serve personally, or by mail, upon each creditor a complete list of all the creditors who have proved their claims, with a statement of the amount claimed.

Section 7 requires every proof of a claim to be sworn to, and to state the actual amount unpaid, the consideration, when contracted, and when due; whether any and what securities are held therefor; whether any and what payments have been made thereon; and that the claimant has not, nor has any other person for him, received any security or satisfaction other than that by him set forth.

Section 8 provides for contesting claims by the assignee on his own motion, or at the request of any creditor. The service of such a request operates to stay all payment of dividends on the claim until the further order of the court.

Section 9 prescribes the proceedings for making the contest, and after issue is joined it is provided as follows:

"The circuit court of said county shall proceed to the trial of said cause in the same manner as in other suits at law, allowing a jury, if demanded, * * * and the court shall have the same power over the verdict of a jury and shall render judgment thereon as in other suits at law, except that no execution shall be awarded or issue in favor of the claimant. * * * *The amount of the claim as finally adjudicated*, after allowing a proper sum for interest to or from the time of making a dividend upon the other claims, *shall be the amount upon which a dividend shall be computed*."

The petitioner's claim has passed through the various stages of this statutory proceeding, including the contest,

and the amount upon which it asks to have a dividend computed and paid is "the amount of the claim as finally adjudicated" in such contest. I know of no power in the courts to gainsay this clear, statutory right. *Farwell v. Myers*, 66 Mich. 678 (33 N. W. Rep. 760). It will be noticed that although reference is made in two different sections of the statute to the fact that the creditor may have security, which he is required to disclose, yet he is nowhere required to surrender such security before receiving a dividend, nor to deduct the amount or value thereof, and accept a dividend on the balance of his debt. The absence of such a provision in the statute is significant, and clearly indicates that such a rule was not intended to be established.

The order and decree of the court below is affirmed, with costs.

CHAMPLIN, C. J., LONG and GRANT, JJ., concurred with CAHILL, J.

MORSE, J., *(dissenting)*. I do not think this case is settled by *Southern Mich. Nat'l Bank v. Byles*, 67 Mich. 296. In that case the money which had been received by the bank came from indorsers. The notes which were the basis of the claim of the bank against the insolvent estate of Kellogg, Sawyer & Co. were indorsed by Chickering & Kyser. Before the dividend was declared against the estate of Kellogg, Sawyer & Co., the bank received some five hundred and odd dollars from the indorsers. It was held that nevertheless the bank was entitled to a dividend upon its full claim without deducting this payment against the estate of Kellogg, Sawyer & Co. It was so held for the express reason that the other creditors had no right, legal or equitable, to the moneys received from these indorsers. This case is different. The prop-

erty from which the money was received in this case belonged to the estate of the assignor, and the other creditors had a lien upon it subject only to the prior lien or security of the Third National Bank. I cannot indorse the argument in support of the equity of the rule laid down in the opinion of Mr. Justice CAHILL. Its equity is not apparent to me. On the contrary, the contention of the defendant seems to be the most equitable. Take an illustration. A. fails, and makes a general assignment for the benefit of his creditors. His assets are $11,000. His liabilities are $15,000. He owes B. $10,000, C. $5,000. B. has security upon some of the assigned property. Such security is worth $5,000. B. proves his claim for the full amount, $10,000. Before a dividend is declared, B. converts his security into money, and receives $5,000 in cash upon his debt. This $5,000 being withdrawn, leaves to be divided $6,000. B.'s debt being now reduced to $5,000, and unsecured, the same as C.'s, it would appear equitable that each should receive $3,000. Then B. would receive the amount of his security, $5,000, and 50 per cent. upon the balance, $3,000, total $8,000, and C. would get 50 per cent., $3,000. But under the rule established by Mr. Justice CAHILL, B. would get the amount of his security, $5,000, and a dividend upon the balance as upon his claim of $10,000 to C.'s $5,000, to wit, B. $4,000, C. $2,000,—making a total to B. of $9,000 and to C. of $2,000. By this method of dealing, B. not only gets the full advantage of his security, but receives two dollars to C.'s one upon their unsecured debts. Where is the equity of such a division? I am not able to see it. When B. is given the full amount of his security, his advantage over the unsecured creditor ought to end, and there can be no equity in any other holding.

If the rule as expressed by Mr. Justice CAHILL is to

prevail in matters of general assignment for the benefit of creditors, it will also by analogy govern claims against the estates of deceased insolvents in the probate courts. The secured creditor can withdraw the property upon which he has a mortgage, or other lien by way of security, from the body of the estate, and yet prove his claim for the full amount against the estate, and take his dividend upon it. Such has not been the practice of the probate courts in this State to my knowledge. And it would seem that the general policy of our laws is not favorable to the rule. How. Stat. § 8824, in relation to the proceedings to be taken in the case of fraudulent and insolvent debtors, provides that a petitioning creditor who holds a mortgage or other security—

"Upon any real or personal estate of the debtor * * * shall not become a petitioner in respect to the debt so secured, unless he shall add to his signature to the petition a declaration in writing that he relinquishes to the assignees who shall be appointed * * * such mortgage or other security for the benefit of all the creditors of such debtor, which declaration shall operate as an assignment," etc.

It is true that the Pennsylvania cases cited by Justice CAHILL go to the full extent of the doctrine announced by him, but an examination of other authorities show that in some other states the rule is as I contend. See Burrill, Assignm. (5th ed.) § 440, pp. 701–703; *Wurtz v. Hart*, 13 Iowa, 515; *Amory v. Francis*, 16 Mass. 308; *Bell v. Fleming's Ex'ors*, 12 N. J. Eq. 490. Indiana, Texas, New Hampshire, and other states, recognizing the justice of the rule that the creditor must when he has received his security apply it as a payment on his debt, and only collect a dividend *pro rata* with the other creditors from the estate upon the balance, have adopted statutes in harmony with the holding in Iowa and Mass-

achusetts. As is well said by Chief Justice Parker in *Amory v. Francis,* 16 Mass. 310, any other holding than the one for which I contend would be a gross violation of the equality intended to be produced by the bankrupt laws,—

"And the creditor holding the pledge would in fact have a greater security than that pledge was intended to give him. For originally it would have been security only for the proportion of the debt equal to its value; whereas by proving the whole debt, and holding the pledge for the balance, it becomes security for as much more than its value as is the dividend, which may be received upon the whole debt." See, also, *Farnum v. Boutelle,* 13 Metc. 159.

It must be remembered in this case that the bank claims to own the three vessels by virtue of its mortgages; that they have been sold, and the sale confirmed. The receiver paid to the bank the sum of $6,989.13, which has reduced its debt by that amount. Now upon what principle of equity is the bank entitled to a dividend upon this $6,989.13 from the balance of the property, upon which it never had any security, and upon a sum which the insolvent is not owing to the bank?

I think the circuit judge was in error in his order, and that the bank is entitled to receive a dividend only upon $22,178.64 less $6,989.13, to wit, the sum of $15,189.51.