### 32249.   BLALOCK *v.* BROWN.

DECIDED FEBRUARY 3, 1949.

*Wright, Rogers, Magruder & Hoyt,* for plaintiff in error.
*Lanham, Parker & Clary,* contra.

GARDNER, J. ■ In the outset we might make the observation that aeronautic transportation is, comparatively speaking, recent. Under the Act of Congress of 1938, with reference to the Civil Aeronautics Act, section 503 of that act as amended, 49 U. S. C. A., § 523 (b), reads: "No conveyance made or given on or after the effective date of this section, which affects the title to, or interest in, any civil aircraft of the United States, or any portion thereof, shall be valid in respect of such aircraft or portion thereof against any person other than the person by whom the conveyance is made or given, his heir or devisee, and any person having actual notice thereof, until such conveyance is recorded in the office of the Secretary of the Board. Every such conveyance so recorded in the office of the Secretary of the Board shall be valid as to all persons without further recordation. Any instrument, recordation of which is required by the provisions of this section, shall take effect from the date of its recordation, and not from the date of its execution." It is the contention of the defendant Blalock, the plaintiff in error here, that even though

the airplane in question had never been engaged in interstate travel and was not intended to be so used by Brown, the defendant in error here, that the Act of Congress above set forth is controlling because he, the defendant Blalock, complied with its regulations and the plaintiff Brown did not, and had no paper of record that would put Blalock on notice when he purchased the airplane that Brown had any interest in it. The plaintiff Brown contends that since the airplane had not been used in interstate movements and was not intended to be so used, that the Congress of the United States had no authority, under the Constitution of the United States dealing with interstate commerce, to legislate concerning the airplane in question. So far as counsel for both sides call to our attention, and insofar as we have been able to ascertain, there are but two decisions which deal with the specific question raised by the contentions of counsel. One of those decisions is a decision by the Supreme Court of New York State, Erie County, namely, Aviation Credit Corporation v. Gardner, 174 Misc. 798 (22 N. Y. Supp. 2d, 37) ; and the second is a case by the United States District Court of New Jersey, In re Veterans' Air Express Company Inc., 76 Fed. Supp. 684, which was decided after the New York case on March 19, 1948. These cases are in direct conflict. The New York case (Gardner), holds that the Civil Aeronautics Act passed by Congress has no affect on airplanes engaged in purely intrastate commerce. The Veterans' Express Company case, which specifically comments on the Gardner case, holds that the Civil Aeronautics Act of 1938, as amended, including its regulatory provisions of recordation is within the scope of the Act of Congress whether such aircraft is engaged in interstate commerce or solely in intrastate commerce. It would seem that the decision in the Veterans' Air Express Company case followed the general rule of law on questions of this kind. Briefly, the facts in the Veterans' Air Express Company case are that the Veterans' Air Express Company purchased two airplanes from the United States Government. The Government executed bills of sale to the airplanes to the Express Company, and the Express Company executed chattel mortgages to the Government for the balance due on the airplanes. The bills of sale and chattel mortgages for the airplanes were duly recorded with the Civil Aeronautics Administration in

Washington, D. C. Subsequently to the purchase, the Watson Navigation Company did certain work on the airplanes for the Veterans' Air Express Company in California, for which work the Navigation Company had not been paid. The Navigation Company claimed a lien on the airplanes under the California Code superior to the Government mortgage, claiming that the airplanes were only used in intrastate commerce and not interstate commerce and therefore the recording provisions of the Civil Aeronautics Administration did not apply and further that the chattel mortgages had not been filed under the provisions of the California law. Thereafter, the Watson Navigation Company, who did the work on the airplanes, brought an action to impress a first and prior lien on the airplanes. The United States Government appeared in opposition, contending that upon the recordation of the chattel mortgage by the Government with the Civil Aeronautics Administration, a lien superior to any lien created by State law was effected. The District Court, in rendering its opinion, discussed fully the New York case, and the contentions there involved. We will quote from the Federal Court decision regarding the New York case. The District Court said: "It is clear that the Congress has prescribed the only way in which aircraft may be transferred and in which liens upon aircraft may be duly recorded. In this manner, all persons dealing with aircraft are upon full legal notice concerning possible liens and are charged with the duty of inquiry at the central recording office of the Civil Aeronautics Administration with respect to any aircraft in which they might be concerned.

"There has been some intimation that because the planes in question are not available at the moment, and may not be intended for interstate flights, Federal laws are not applicable. Such a consideration can not be determinative of this issue.

"In attempting to establish the scope of application of Congressional regulation of aircraft, there arises the question of just how far the regulatory right of the separate States of the Union is involved, and whether the Federal government in its legislation may override the control of the States in dealing with aircraft used exclusively in intrastate operations. The immediately pertinent recent opinion is that found in the case of Aviation Credit Corp. v. Gardner, 174 Misc. 798 (22 N. Y. Supp. 2d, 37), Supreme Court of New York, Erie County. In that case, the

court held that the powers of Congress, under the commerce clause of the Federal Constitution, may not be invoked as to purely intrastate enterprises, and indicated that insofar as commercial aviation craft used solely in intrastate commerce are concerned, Congress was without power to exercise dominant control, and State statutes, and more particularly liens on such craft created by State statutes are paramount. That in purely interstate commerce, the States reserve to themselves the right to regulate and control such commerce is indisputable, since 'The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people' as is provided in the United States Constitution. Const. Amen. 10.

"However, the matter of control of aircraft and air navigation would seem by logical interpretation of the Commerce Clause to be resident in the Congress of the United States, despite the fact that in many instances such aircraft may be used solely for operations within the confines of a single State.

"In establishing the right of the Congress to legislate on all matters concerning the traversal of navigable waters by craft of whatever description, the Supreme Court has repeatedly pointed out that commerce includes navigation. In Gilman v. Philadelphia, 3 Wall, 713, 18 L. ed. 96, the court, at pages 724, 725, unequivocally stated: 'Commerce includes navigation. The power to regulate commerce comprehends the control for that purpose, and to the extent necessary, of all the navigable waters of the United States, which are accessible from a State other than those in which they lie. For this purpose they are the public property of the nation, and subject to all the requisite legislation by Congress. This necessarily includes the power to keep them open and free from any obstruction to their navigation, interposed by the States or otherwise; to remove such obstructions when they exist; and to provide, by such sanctions as they may deem proper, against the occurrence of the evil and for the punishment of offenders. For these purposes, Congress possesses all the powers which existed in the States before the adoption of the national Constitution and which have always existed in the Parliament in England. It is for Congress to determine when its full power shall be brought into activity, and as to the regulations and sanctions which shall be provided.'

"This doctrine has been reiterated, time and time again, until the established constitutional basis for Congressional control over navigable rivers and the craft operating thereon is beyond cavil, carping or question. Gilman v. Philadelphia, supra (and other citations).

"In Escanaba Company v. Chicago, supra, the court says (107 U. S. 678, 2 S. Ct. 185, 188, 27 L. ed. 442): 'The power vested in the general government to regulate interstate and foreign commerce involves the control of the waters of the United States which are navigable in fact, so far as it may be necessary to insure their free navigation, when by themselves or their connection with other waters they form a continuous channel for commerce among the states or with foreign countries.'

"The test of whether navigable waters are subject to Congressional control is clearly set forth in most of the cases cited. If the waters afford channels of communication among the states or for commerce with foreign countries, they are ipso facto subject to the constitutionally grounded power for the governing precepts of Congress.

"Since then, Congress has prime control over navigation on the waters of the United States, as described above, a logical extender of the rationale of the Supreme Court in specifically applying the Commerce Clause to regulation of traffic on navigable waters, posits the proposition that Congress has control over navigation in the air, since such navigation constitutes commerce as surely as does carriage of passengers and goods by water. That fact seems so self-evident that this court finds no need for elucidation of the thought. The only further comment required is to point out the incontestible conclusion that Congress has full power to control all aviation activity, since there is no section of the navigable circumambient atmosphere of the United States which is not a part of 'a continuous channel for commerce among the states or with foreign countries.' Escanaba Company v. Chicago, supra. The analogy between the two modes of travel, by water and by air, is exact. And the reasons which are compulsive for establishing Congressional control of water navigation as a constitutionally established prerogative are, if anything, more cogent with regard to navigation of the air. There can be no air pocket so closed and confined within

the geographical limits of any state as to be incontiguous to the interstate and international highways of the air.

"Unquestionably there are certain fields of endeavor in which local viewpoints, local situations and local interests are determining factors. Others, however, transcend the limitations of parochial interest and become part of the concern of all of the people of America, rather than any one State. Unquestionably, attempted restriction of Federal rights by over clamorous and undue insistence on states rights add nothing to the importance of the State, and by hampering the activities of National Government destroys the effectiveness of its operation in those matters which concern all of the people.

"Since, then, this court is of the opinion that the regulatory provisions of recordation in accordance with the Civil Aeronautics Act is within the scope of proper application of Federal Law in a field of Federal competence, the lien claimed by the United States of America is senior to any claim established under a State law affecting the same object."

The New York case (Gardner) appears to contradict all other Federal and State decisions on questions which are similar but not identical. We will call attention to some of them. There are several decisions by the United States District courts, the United States Circuit courts, and the United States Supreme Court which hold that many of the provisions of the Civil Aeronautics Administration such as requiring pilots to obtain licenses, airworthiness certificates for airplanes, etc., shall apply to all airplanes, whether used in interstate or intrastate commerce. Let us take a look at United States v. Drum, 55 Fed. Supp. 151, 155. In that case the United States brought an action against Drum to recover penalties for violation of the Civil Aeronautics Administration regulations prohibiting any person from piloting a civil aircraft unless such person holds a valid pilot's certificate and the aircraft possesses an airworthiness certificate. Drum contended that he owned his own airport, and his own airplane, and that he did not fly on civil airways and that the United States had no jurisdiction over him or his flights; that his flights did not affect interstate commerce and that such provisions were invalid. The court held: "It can not be said from any evidence submitted or of which the court may take judicial knowledge, that the find-

ings of the Board were not well founded to the effect that there had been such increase in 'aeronautical activity of the armed forces of the United States' the number of 'certificated' and 'uncertificated' pilots, that 'any operation of any aircraft in the air space . . either directly affects, or may endanger safety in, interstate, overseas, or foreign air commerce; . . it is necessary that all pilots and aircraft . . be certified . . for the protection of safety in air commerce . .' Upon such findings, the amendments were within the powers conferred by the Act of Congress creating the Board." See also the case of Rosenhan *v.* U. S., 131 Fed. 2d, 932, where appellant appealed from the United States District Court of Utah assessing civil penalties for violation of section 610 (a-1) of the regulations of the Civil Aeronautic Administration in that Rosenhan operated a civil aircraft within a civil airway without having a certificate of airworthiness. The appellant in that case admitted said operation, but contended that his aircraft had an airworthiness certificate from the Utah State Aeronautics Commission and that the airworthiness of his aircraft, although within the Federal designated airways, was wholly within the State of Utah, and not a part of interstate or foreign air commerce and did not affect interstate commerce and that the control over such operation was not within the interstate commerce power of Congress and that the provisions of the Civil Aeronautics Act did not apply. The appellate court held, however, as follows: "It can not be doubted that if the Federal Act is devoted to the promotion of safety and efficiency in interstate commerce, whether it be the stagecoach, sailboat, steamship, railroad train, motor truck, or airplane, if the act bears some reasonable and rational relationship to the subject over which it has assumed to act, the power is supreme and may not be denied although it may include within its scope activities which are intrastate in character." Citing Southern Railway Co. *v.* U. S., 222 U. S. 20 (32 Sup. Ct. 2, 56 L. ed. 72); Texas & P. R. Co. *v.* Rigsby, 241 U. S. 33 (36 Sup. Ct. 482, 60 L. ed. 874); Napier *v.* Atlantic Coast Line R. Co., 272 U. S. 605 (47 Sup. Ct. 207, 71 L. ed. 432).

As we have above observed, with the exception of the Gardner case from New York State, and the Veterans' Air Express Company case, supra, the specific question of the applicability

of the recording provisions of the Civil Aeronautics Administration as to airplanes used in and intended for use in intrastate commerce use only, is a question not previously passed upon by the courts. But upon investigation, we find that the identical question in regard to ships and vessels has been passed upon several times by the Supreme Court of the United States. The wording of the Federal statute which requires the recording of all ships and vessels is almost identical with the recording provisions of the Civil Aeronautics Administration Act. The courts have construed the Act with reference to ships and vessels to be applicable to all vessels, whether used in intrastate or interstate operations. We think these decisions are applicable and controlling in the instant case. This is true because the regulation of navigation and aviation poses identical problems. The Federal statute regarding the recordation of vessels set forth in 46 U. S. C. A., § 921 (a), provides:. "No sale, conveyance, or mortgage, which, at the time such sale, conveyance or mortgage is made, includes a vessel of the United States, or any portion thereof, as a whole or any part of the property sold, conveyed, or mortgaged, shall be valid, in respect to such vessel, against any person other than the grantor or mortgagor, his heir or devisee, and a person having actual notice thereof, until such bill of sale, conveyance or mortgage is recorded in the office of the Collector of Customs of the port of documentation of such vessel, as provided in subdivision (b) of this section." The above act of Congress revised somewhat the prior act of Congress of July 29, 1850, which provided: "No bill of sale, mortgage, hypothecation, or conveyance of any vessel or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance, be recorded in the office of the collector of the customs where such vessel is registered or enrolled." In the case of White's Bank v. Smith, 74 U. S. 646 (19 L. ed. 211), the court said: "Some question is made as to the power of Congress over the title and property of vessels of the United States to such an extent as to enable it to pass a recording act. But, after the regulation of this species of property by the several acts of Congress to which we have referred, and in respect to which there has

never been a question, there can be very little hesitation in conceding the power to protect the rights of subsequent bona fide purchasers and mortgages therein." See also Atlantic Trust Company *v.* Vigilancia, 73 Fed. 452, wherein it was said: "A lienor of a vessel owned in New York can not secure priority over previous mortgages thereon by showing that they were not filed and refiled, as required by the State laws relating to chattel mortgages, when it appears that they were recorded in the office of the collector of the port of New York before he acquired his lien; for State statutes are inoperative as to vessel mortgages which have been properly recorded, pursuant to the laws of the United States."

Let us take a look at some State decisions on the question of ships and vessels. The Supreme Court of Michigan in Haug *v.* Third National Bank, 77 Mich. 474 (43 N. W. 939), said: "The defendant claims that the laws of this State in relation to the recording of chattel mortgages and bills of sale do not apply to vessels duly licensed and enrolled under the acts of Congress and that no presumption of fraud which would arise under the State laws because of the failure to record these bills of sale in the office or place required by our statutes can prevail against the validity of these instruments. The answer denies any fraud in fact; and there can be no fraud in law, if its claim be correct. It has been decided in this and other States and also in the Supreme Court of the United States, that the act of Congress in reference to the recording of mortgages upon enrolled and licensed vessels supersedes so much of the State laws as refer to the recording of mortgages in the township or city clerk's office."

The Supreme Court of Rhode Island held in Howe *v.* Tefft, 15 R. I. 477 (8 Atl. 707): "The bill of exceptions shows that the plaintiffs are mortgagees by mortgage duly registered under the shipping laws of the United States. They hold their title under these laws, and the question is whether an attachment under State laws can avail to interfere with, modify, or obstruct the exercise of their rights as mortgagees under these laws. We think the question is virtually answered by the decision of the Supreme Court of the United States in the case of Aldrich *v.* Ætna Ins. Company, 8 Wall. 491 (19 L. ed. 473), and White's Bank *v.* Smith, 7 Wall. 646 (19 L. ed. 211) . . the doctrine

of the court being that the registration laws of the United States exclude all State legislation in respect to the same subject." It seems clear to us that in view of the decisions above cited which show that other provisions of the Civil Aeronautics Act are valid, and that the recording provisions of the United States statute dealing with vessels, which seem so much akin to the recording provisions of aeroplanes with the Civil Aeronautics Administration control the issues in the instant case. It is our opinion that the only way that the provisions of the Civil Aeronautics Administration Act would not apply under the facts in the instant case would be in the event that the purchaser Blalock had actual notice of the prior sale of the airplane to Brown. The uncontested evidence shows that the purchaser Blalock had no actual knowledge of a prior sale. There is no provision of law in this State which requires that a bill of sale be recorded. There was no bill of sale recorded in this State. If there had been a recording of it, it would serve as no constructive notice to a subsequent purchaser. There is no contention that the Civil Aeronautics Administration Act under the statute of 1938 as amended, was beyond the power of the Congress of art. 1, sec. 8, par. 3 of the Constitution of the United States. If the Congress under constitutional provision can require the recording of the purchase and operation of vessels on a navigable stream traversing two or more States, even though operating intrastate only, it would seem clear by analogy that the Congress would have the same right under the same constitutional provision to legislate to the effect that airplanes, although operating only intrastate, for the protection of the public, would have the same right to require the recording of airplanes with the Civil Aeronautics Administration.

The court erred in directing a verdict for the plaintiff Brown.

*Judgment reversed. MacIntyre, P. J., and Townsend, J., concur.*