183 So.2d 441 (1966)
AIRCRAFT INVESTMENT CORPORATION, Plaintiff-Appellant,
v.
FISHER FLYING SERVICE, INC., and Joel F. Fisher, Jr., Defendants-Appellees,
J. Howell Flournoy, Sheriff of Caddo Parish, Louisiana, Intervenor.
No. 10509.
Court of Appeal of Louisiana, Second Circuit.
January 26, 1966.
Rehearing Denied March 1, 1966.
*442 Shuey & Smith and Booth, Lockard, Jack Pleasant & LeSage, Shreveport, for appellant.
Cook, Clark, Egan, Yancey & King, Shreveport, for intervenor.
Johnson, Morelock, Gatti, Egan & Cook, Shreveport, for appellees.
Before HARDY, GLADNEY and BOLIN, JJ.
BOLIN, Judge.
This is a suit by Aircraft Investment Corporation against Fisher Flying Service, Inc., and Joel F. Fisher, Jr., to foreclose by ordinary process a chattel mortgage on a Piper airplane. At the time of the institution of the suit J. Howell Flournoy, Sheriff of Caddo Parish, Louisiana, had possession of the plane. Service of citation having been made on the sheriff, he filed an intervention asserting title to the plane and seeking to enjoin the sale. Following trial judgment was rendered in favor of plaintiff and against the defendants, in solido, in the principal sum of $19,204.32, together with interest and attorneys' fees, but intervoner's title to the airplane was recognized free of any mortgage or lien claimed by plaintiff. Plaintiff has appealed from the judgment insofar as it recognized intervenor's claim.
A detailed statement of all the facts and circumstances surrounding this case would tend only to complicate a relatively simple situation. Since resolution of the controversy poses the most difficult problem, we shall state only the salient facts and apply our time and talents to its solution.
We find the pertinent facts to be that plaintiff was engaged principally in the business of financing the sale of aircraft with offices at Fort Worth, Texas. Fisher Flying Service, Inc., was located at Shreveport, Louisiana, with Joel F. Fisher, Jr., as one of its stockholders and general manager. Fisher Flying Service was engaged in instructing students to fly, operating planes on charter flights, leasing of planes and was a franchised dealer for the Piper Airplane Corporation. Defendants' business was located at the downtown Shreveport Airport and subsequent to 1959 had sold a number of airplanes to the public. Plaintiff had participated in the financing of at least eight of these planes.
*443 The Sheriff of Caddo Parish had owned an airplane used principally for the transfer of prisoners and on July 12, 1961, entered into an agreement with the Fisher Flying Service, Inc., whereby he agreed to trade in a used airplane owned by his department on the purchase price of a new 1961 Piper Comanche. The total consideration of this sale was approximately $25,000 of which the value of the used plane represented some $15,000. On August 1, 1961, defendant Fisher delivered the new airplane to the Sheriff's department in accordance with the agreement. The balance due on the sale was not paid by the sheriff to defendants until December 1961. The explanation for the delay in payment was that the agreement contemplated the cash portion of the purchase price would be paid when the sheriff's salary fund was augmented by the new tax collections. When this payment was made Fisher executed a bill of sale to the sheriff which was registered with the Federal Aviation Agency at the proper office in Oklahoma City, Oklahoma.
The Piper Comanche airplane in question was originally sold by Piper Aircraft Corporation to Louisiana Aircraft, Inc., of Baton Rouge, on July 24, 1961. Louisiana Aircraft, by a bill of sale acknowledged August 1, 1961, sold the plane to the Fisher Flying Service. On August 3, 1961, Fisher Flying Service executed a chattel mortgage in favor of plaintiff at Shreveport, Louisiana, which was recorded on August 17, 1961, in the Oklahoma office of the Federal Aviation Agency.
The foregoing facts show that if the case be governed by the Louisiana law title to the airplane passed to the intervenor on August 1, 1961. The principal issue raised is whether the intervenor has a title clear of any claim by plaintiff. In solving this question it must be borne in mind that even though intervenor had secured title to the movable property on August 1, 1961, and plaintiff's mortgage on the plane was not filed at the proper Federal office in Oklahoma City until August 17, 1961, serious questions are raised and must be answered by this court.
Appellant contends that Congress, by the enactment of the Federal Aviation Act of 1958, § 503, 49 U.S.C.A. § 1403, has preempted the field of registration and recording of any instruments affecting commercial aircraft so that the intervenor acquired no title or right to the aircraft in question until a bill of sale for same was filed for recordation at the Federal Aviation Agency at Oklahoma City as required by the Federal Statute.
We shall first direct our attention to the question of whether the Federal Aviation Act has preempted the field of aircraft registration and, if so, what effect does it have upon the present case.
United States Congress by virtue of the commerce clause of the United States Constitution has paramount power and control over air, and consequently has authority to enact regulations and statutes covering aircraft including aircraft operated wholly within a state. Blalock v. Brown, 78 Ga.App. 537, 51 S.E.2d 610, 9 A.L.R.2d 476 (1949), In re Veterans' Air Express Company, Inc., 76 F.Supp. 684.
While counsel for the intervenor has offered many citations of authority to the contrary and presented persuasive arguments to this court by way of brief and oral argument, we are constrained to hold that Congress has preempted the field of conveyancing of interests in aircraft in order to facilitate the control and promotion of air commerce insofar as the filing or recordation of any instruments affecting title or interest in and to such aircraft. Pacific Financial Corp. v. Central Bank & Trust Co., 296 F.2d 68, 71 (5th Circuit 1961); Texas National Bank of Houston v. Aufderheide, D.C., 235 F.Supp. 599 (1964) and numerous cases therein.
*444 The provisions of the Federal Aviation Act relating to recordation appear in § 1403 as follows:
"(a) The administrator shall establish and maintain a system for the recording of each and all of the following:
"(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States; * * *" ("Conveyance" is defined in § 1301 (17) as including Mortgages.)
"(c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft * * * against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator * * *."
We think the crux of this case is the proper interpretation of the following phrase from 49 U.S.C.A. § 1403, previously quoted as follows: "* * * or any person having actual notice thereof, * * *" (Emphasis supplied by this Court.) It has been held in numerous cases that actual notice does not mean that a party must actually see or hear a thing but it can be concluded from all the facts surrounding the transaction. In the case of Texas National Bank of Houston v. Aufderheide, cited supra, a Texas retail aircraft dealer sold to defendants an airplane which at the time of the sale was subject to a "floor plan" mortgage in favor of plaintiff which mortgage had been duly recorded with the office of the Federal Aviation Agency in Oklahoma City pursuant to the cited statute. On February 20, 1963, the plane was sold at Houston, Texas to the defendants by a franchised retail dealer in that type aircraft. The purchaser of the plane paid the dealer the purchase price thereof but the dealer failed to discharge the lien of the bank. Suit was filed when the bank was unable to collect its debt from the dealer and was unable to get the plane back from the purchaser.
The court held that title to the airplane passed to the purchasers free and clear of plaintiff's chattel mortgage. The court said:
"It does not follow, however, that section 1403 has repealed or abolished the general rule of chattel mortgage law that when a mortgagee consents to the sale of a mortgaged chattel free of lien by the mortgagor, the purchaser takes free of the mortgage lien and his rights are superior to those of the mortgagee. 15 Am.Jur.2d, Chattel Mortgages §§ 150, 151, and 153; 14 C. J.S. Chattel Mortgages § 262. And a provision in a chattel mortgage prohibiting a sale of the mortgaged chattel without the mortgagee's consent is waived if the mortgagee knowingly permits the violation of such provision. 15 Am.Jur.2d, p. 324.
"In 14 C.J.S., Chattel Mortgages § 262 b, pp. 878-879, it is said that a mortgagee's consent to a sale by the mortgagor of the property may be implied or inferred from the conduct of or dealings between the parties. It is also said:
"`In the absence of a stipulation to the contrary, consent to sell mortgaged property consisting of a stock of goods is implied from the fact that the mortgagor is permitted by a provision in the mortgage to remain in possession of the property, or from the fact that the mortgagee accepted a mortgage on such property and permitted the mortgagor to remain in possession thereof with knowledge that it would be exposed and offered for sale by the mortgagor in the ordinary course of trade.'" (14 C.J.S. at 878-880.)
"The Court holds that the general rule mentioned above has not been repealed or eliminated by section 1403, *445 and that said rule is applicable to the facts of this case."
The court found in the cited case the plaintiff bank had for a long period of time been engaged in financing the aircraft dealer's transactions and was therefore charged with knowledge the planes owned by the dealer were offered by him for sale to the public. In the instant case plaintiff had actual knowledge that Fisher's planes were offered for sale to the public. Plaintiff's vice-president admitted this in his testimony. The same officer admitted on examination that the type of financing his company was doing for the Fisher Flying Service was a "floor plan" type transaction. Numerous letters were also introduced into evidence wherein the company referred to the financing plan as a "floor plan".
We note also the following language from the Aufderheide case which we feel to be both enlightening and pertinent:
"Ordinarily, when a person goes into a merchant's place of business to make a purchase, whether it be of an automobile, a television set, a washing machine, or a pound of nails, the purchaser ought to have the right to assume that the merchant has a right to sell the commodity in question and should not be required to make a record search before purchasing or to see to it that the merchant obtains a valid release of the item from a bank floor plan before delivering it to the purchaser and receiving his money or obligation. The Court sees no reason why that right should not extend to the purchaser of an airplane who buys it from a recognized dealer from a regular inventory or display and in the ordinary course of business."
Plaintiff was well aware of Fisher's business activities. The record is convincing Aircraft Investment Corporation was vitally interested in securing the financing of Fisher's business because of the profitable interest rate, insurance and retail contracts which the business generated. The vice-president of plaintiff company testified he knew Fisher was an authorized dealer of Piper airplanes and that his method of attracting business was by offering student training and by the operation of charter flights. The mere fact that Fisher did not have an elaborate showroom for the displaying of planes does not detract from the fact that he was a franchised dealer. From the foregoing and other facts plaintiff should have realized that any plane received by Fisher was subject to sale from the time it was delivered. On the other hand, the intervenor had no reason to suspect Fisher could not convey good title inasmuch as he was dealing with a person who was a retail dealer in the sale of aircraft. There is no evidence that he had any knowledge of any arrangements between Fisher and plaintiff. A search of the records of the Federal Aviation Agency at the time the transfer to the intervenor was effected would have disclosed no lien in favor of plaintiff or anyone else.
Plaintiff urges that intervenor should also be charged with knowledge of the dealings of Joel F. Fisher, Jr., in that the record discloses he was a part-time deputy for the sheriff. The testimony in this respect shows that Fisher received the sum of $250 per month from the Sheriff's office for his services in piloting the plane. This had no connection with the operation of Fisher's retail dealership.
By way of summary we conclude that the field of sale and recordation of instruments affecting the title or interest to aircraft has been preempted by the Federal Government, but that under the provisions of the Federal Act, cited supra, the facts of the instant case show plaintiff is charged with having actual knowledge of the existence of the sale of the plane to the intervenor at the time it recorded its mortgage.
Having decided the case on this point, we pretermit discussing all the other arguments *446 advanced by intervenor for the affirmation of the judgment appealed from.
For the reasons assigned the judgment appealed from is affirmed at appellant's cost.